# JAMES H. REES

## *v.*

## THE CITY OF CHICAGO.

1. JUDGMENTS AGAINST SEVERAL—*when a part only may be bound.* In a proceeding against two or more defendants, whose interests are several, the finding against any one of them, thus situated, not being appealed from, is conclusive against such party.

2. PRACTICE IN THE SUPREME COURT—*of partial reversal.* A judgment, or decree against joint defendants, except when the interests are several, can not be affirmed in part and reversed in part, but must stand as entered, or be reversed *in toto.*

3. JOINT JUDGMENTS—*liability under them.* A party to a joint judgment, can not discharge himself by paying a proportionate share of the judgment.

4. PARTIES ON APPEAL—*alone to be affected.* An appellate court can not make a decree against one who has not appealed, even though the court below was without jurisdiction; and such party is precluded from all benefit resulting from the appeal. No party except the appellant can be heard in support of it.

5. SALE OF REALTY—*divestiture of title.* The bare receipt of money by a vendor of land, will not transfer the title, or give a right of action to compel a specific performance of the contract of sale. Nor can title be divested under void. or without form of law by acceptance of the money tendered.

6.  TAKING PRIVATE PROPERTY FOR PUBLIC USE—*divestiture of title.*  Where, in the exercise of the right of eminent domain, private property is taken for public use, condemnation of the lands effected, the damages assessed and accepted by the owners, who declare their assent to the proceedings, the title thereby becomes divested.

7.  DEDICATION.  A dedication is not vitiated because it may have been effected by the payment of money.

8.  To effect a dedication, there must be an intent so to do, and no particular time is necessary for evidence of dedication; it may take place immediately.

9.  Where ground is dedicated to public use and accepted, acceptance may be shown by user by the public, or by acts of officers.

10.  A dedication is to be proved, not alone by deed, but by matter *in pais,* consisting of the acts and accompanying declarations of the owners.

11.  DEDICATION—ESTOPPEL.  A party will be estopped from denying a dedication which has received his grantor's acquiesence.

WRIT OF ERROR to the Superior Court of Chicago.

Ejectment for a portion of North Water Street, in the City of Chicago.

In 1848, the premises were owned by W. G. and G. W. Ewing, who then leased to Hamilton.  In January, 1849, the city, pursuant to its charter, took steps to condemn the premises for public use, and such proceedings were had that at the May term, 1849, of the Circuit Court of Cook county, an order was entered condemning these and other lands for the purpose of a public street.  Damages were assessed and collected by warrant, nearly sufficient to pay for the land condemned.  In 1850, the street was opened, and has ever since continued to be a public thoroughfare; but some of the parties against whom assessments were made for opening it, took an appeal to this court, from the judgment and proceedings had in the Circuit Court, and in 1851, that judgment was reversed.  *Canal Trustees et al.,* v. *City of Chicago,* 12 Ill. 403.

The Ewings did not join in the appeal but received the condemnation money awarded them by the judgment; they also knew that the street was thrown open, and that their and

other premises were thereby occupied, and that buildings and other improvements were erected with reference thereto; they also modified their lease to Hamilton to correspond with these facts; and the evidence tended to show, that for several years subsequently the public, the city, and individuals were permitted to, and did, act upon the supposition that the street was legally existing. In 1856, the plaintiff in error acquired whatever remaining interest the Ewings then had in the premises.

Messrs. ARRINGTON and DENT; and W. F. STEARNS, and MERRICK and McKINNON, for plaintiff in error.

The plaintiff in error has shown a clear chain of title; therefore he must recover unless the title of the Ewings was divested by some intermediate act, or conveyance, before the transfer to Rees. This could only have been by one of three modes: *condemnation, dedication,* or *estoppel.*

I. It would seem scarcely necessary to mention condemnation, to discard it from the sphere of the investigation. The entire act of condemnation had been reversed by this court. Hence there is no condemnation upon which to predicate any sort of title.

II. There was no dedication. Dedication is defined to be the act of *devoting* or *giving* property to some proper object, and in such manner as to conclude the owner. 2 Smith's Lead. Cas. 180; *Hunter* v. *Trustees, &c.,* 6 Hill, 407.

1. Dedication is not a condemnation, either attempted or perfect.

2. It is not a sale or an agreement for a sale. Various general rules have been enunciated as the tests of a dedication by courts and elementary writers. The following will be sufficient for our purpose: *First.* There must be an intention to dedicate. 2 Hillard's Real Property, 31, 34; *Warren* v. *Jacksonville,* 15 Ill. 240. *Second.* The words, or acts, which effect a dedication must be unambiguous. Smith's L. C. 182; Angell on Highways, 11. *Third.* The act of dedication must

be free and voluntary; this follows from the definition. There-
fore (1) there can be no dedication under compulsory process.
Angell on Highways, 128, 12; *Gould* v. *Glass*, 19 Barb. 179,
193—(2) there can be no dedication where there is an agree-
ment on the subject. The logical process evolving this rule is
this : An agreement to sell or transfer for value, in exchange,
is not a dedication ; therefore where there is an agreement
there can be no dedication, at least contemporaneously with it.

It is impossible to indicate any act, or declaration of the
Ewings' or of Col. Hamilton, their agent, which manifested
the slightest intention to dedicate.

III.   Of the estoppel.   In strict logical order the subjects
of estoppel and dedication should be treated under the same
head ; but for the sake of convenience we choose to separate
the two topics.   The estoppel now to be considered is that
supposed to arise from the Ewings receiving the condemnation
money assessed upon the condemnation. But under the
circumstances there was no estoppel.   *Pickard* v. *Sears*, 6 Ad.
& Ell. 475 ; 1 Gr. Evid. § 207.   The only case adduced con-
tradictory of this inference is *Town* v. *Town of Blackberry*,
29 Ill. 146 ; but that case is not analogous for there the con-
demnation was regular and valid.

Mr. F. H. KALES, for the defendant in error.

I.   By the judgment of condemnation the plaintiff is
estopped from asserting title, provided the judgment as
against his grantors is still in force.   *Morris* v. *City of
Chicago*, 11 Ill. 652.

1.   The court had jurisdiction to render that judgment and
hence its validity can not be drawn in question collaterally.

2.   It is contended that the reversal of that judgment as to
others, in the case of the   *Canal Trustees, et al.* v. *City of
Chicago*, 12 Ill. 403, was a reversal as to the Ewings who took
no appeal.   But the judgment of the Circuit Court, although
in form joint, was in legal effect several ; therefore its reversal

did not affect those not appealing. *Enos* v. *Capps*, 12 Ill. 255; *Henrickson* v. *Van Winkle*, 21 Ill. 274.

II. The grantors of the plaintiff by voluntarily accepting the damages awarded them with full knowledge of the facts, thereby released all errors not of a jurisdictional character in the case of the *Canal Trustees* v. *City of Chicago*; *Morgan* v. *Ladd*, 2 Gilm. 415.

III. The Ewings let the city into possession of the land for public use, and the city paid them a compensation therefor; while therefore the city only holds possession for the public use, it can not be disturbed therein, even if the judgment of condemnation was void. *Thornton* v. *The heirs of Henry*, 2 Scam. 220; *Shirley* v. *Spencer*, 4 Gilm. 600; *Penn* v. *Heisey*, 19 Ill. 295.

IV. Independent of the proceedings on the part of the city to condemn, and thus acquire the *fee*, and prior to the time the plaintiff purchased at the partition sale, the Ewings had dedicated the land to the public use.

1. No form or ceremony is necessary to make a dedication; the intention of the owner manifested by express consent, or acquiescence in the user is sufficient; nor is it material whether the consent is given or the intent manifested when the user commences or afterwards, provided the user is continued; for the public is an ever-existing grantee capable of taking at any time. *Warren* v. *Trustees of Town of Jacksonville*, 15 Ill. 240; *Waugh* v. *Leech*, 28 Ill. 491; *Denning* v. *Roome*, 6 Wend. 651.

2. The acquiescence of the Ewings in the public use of the premises for a street, and their permitting private rights to be acquired with reference thereto, without objection, were acts sufficiently clear and unequivocal to make out a dedication. *Godfrey* v. *City of Alton; Dimon* v. *People*, 17 Ill. 422; *Alvord* v. *Ashley*, 17 Ill. 363; *Hunter* v. *Trustees, etc.*, 6 Hill, 407; *City of Cincinnati* v. *White's Lessee*, 6 Pet. 439.

3. It is objected that there could be no dedication because 1st. There was an agreement on the subject. 2d. The acts of

the Ewings were superinduced by a consideration partly of money; and 3d. The circumstances from which a dedication might be inferred occurred while compulsory process and its consequences impended over the Ewings. But these objections are insufficient. The existence of an agreement is not a valid objection, unless it is of such a character as to explain away the presumption of a dedication. *Marcy* v. *Taylor*, 19 Ill. 633. Nor will a consideration prevent a dedication; it was held in *Denning* v. *Roome*, (*supra*) that the application of the owner for pecuniary compensation, after a long public use, was evidence that the public had acquired rights in the premises, and therefore tended to prove a prior dedication, as that was, under the circumstances, the only mode by which the public could have acquired any right; and in the case of *City of Cincinnati* v. *White's Lessee*, it was held that the interests of the public were a *sufficient consideration* to support a dedication; the third objection is fully answered by the case of *Denning* v. *Roome*.

4. The question of dedication was one of fact; the evidence tends to establish it; and therefore the finding below will not be disturbed. *Alvord* v. *Ashley*, 17 Ill. 869; *Daniels* v. *People*, 21 Ill. 443..

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of ejectment brought in the Superior Court of the City of Chicago by the plaintiff in error against the city, to recover the possession of thirty-one feet of ground off the south end of lot five in block two, in the original town of Chicago. This piece of ground is described as being " bounded on the south by an eighteen foot alley, on the west by North Clark street, and extending east of equal width from North Clark street eighty feet." The cause was tried by the court on the plea of not guilty, and a verdict rendered for the defendant. A motion for a new trial was made and overruled and a bill of exceptions taken. A judgment was rendered

against the plaintiff for costs, and he brings the case here by writ of error.

The points made here are : First. Was this ground legally condemned for a street ? Second. If not, was it dedicated by the owners to the use of the public ? Third. Have the former owners done any act which should estop them or their grantee, as against the defendant, from setting up title ? Fourth. Can the action of ejectment be maintained on the facts of this case ?

It is argued that the title to the ground in controversy, was, at one time, in W. G. and G. W. Ewing, under whom these parties deraign their title. The plaintiff in error claiming by a purchase under a decree in partition, in a suit instituted by G. W. Ewing against the devisees and legal representatives of W. G. Ewing, who died in 1854, and the defendant in error by an alleged dedication of this ground, by the Ewings, 'prior to the partition suit, to the city, as part of New North Water street, and further claiming, under proceedings by the city to condemn this piece of ground for the use of the public, as a street of the city.

If there was no dedication or condemnation of this ground, then it is not denied the plaintiff in error has made out a good title to it. If there was either a condemnation of the land, or a dedication by the Ewings, then the claim of the city must prevail.

The plaintiff in error, to make out his title, offered in evidence the will of W. G. Ewing, and its probate in the County Court of Cook county ; and also the record of a partition suit, wherein G. W. Ewing was complainant and Esther Ewing and others defendants, instituted in 1856. By this proceeding, partition was sought of lands and lots in which W. G. and G. W. Ewing were jointly interested, and among them was this lot five in block two. Such proceedings were had in this suit, that a decree of partition passed, and commissioners were duly appointed to make partition. By their report it appeared that this thirty-one feet was not considered susceptible of division, and a special commissioner was

appointed to sell it on the usual terms. After due notice of sale, the commissioner sold the ground at public auction to the plaintiff in error, and made report of the sale, which was confirmed by the court. He also executed a deed to the plaintiff in error for the premises, dated August 27, 1856. It was also proved that plaintiff had fully paid the purchase money, amounting to three thousand four hundred and seventy-two dollars, more than one-half of which, after deducting the costs and expenses, was received by G. W. Ewing as his share of the proceeds, and which share exceeded twelve hundred dollars.

These facts make out a clear case, *prima facie,* for the plaintiff in error.

On the part of the city, it was proved that in January, 1849, the Common Council in pursuance of the charter of the city, passed an order to establish North Water street, and directed that proper steps be taken for opening it for use. Lot five in block two, before this order of the Common Council, had its south abuttal on an alley eighteen feet wide, which extended through blocks seven, (at the north branch) six, five, four, three and two. According to the plat in the record, this alley did not extend through block one. In place of the alley there was a street, which was made eighty feet in width, by taking off from the north ends of the lots on the south side of the street, ground sufficient with the then existing street, to make a street eighty feet wide. So in block two, the alley of eighteen feet, with thirty-one feet from the south end of lot five, and the same quantity from the north end of lot four, made up the eighty feet, the width of the new street. After this location of the street by the Common Council, they presented a petition to the Circuit Court of Cook county, in February following, reciting this fact, and stating that they desired to appropriate the ground over which this street would pass, and prayed that commissioners be appointed, and for the condemnation of all the ground over which the street would run, including the premises in controversy. The court

22—38TH ILL.

appointed commissioners to examine the ground and report upon the necessity of the street, the value of the ground to be condemned, and the injury to the owners thereof respectively, and they were required to assess and apportion the damages and expenses of the improvement, on the real estate benefited by it.

The report of the commissioners was made to the succeeding May term of the court, in favor of opening the street, and of condemning the land it would occupy, including the south end of lot five, and they also reported the assessment and apportionment of the damages and expenses of the improvement, the value of the land and the injury to the owners thereof respectively, and they also assessed the costs of the proceeding *pro rata* upon the property deemed benefited by the improvement. The report was confirmed by the court, was certified to, and ratified by the Common Council, and a warrant to collect the assessments ordered to be issued. This warrant was duly issued in August following, on which the damages assessed, amounting to near sixteen thousand dollars, were collected, except about the sum of one hundred and eighty-five dollars, all which was paid over to the parties entitled.

Some of the parties assessed took an appeal to this court from the order confirming the commissioners' report, which appeal was heard in 1851, and resulted in a reversal of the order of the court below, on the ground that the costs of the proceedings, including attorney's and clerk's fees, had been included in the assessment, and remanded the cause. The case is reported in 12 Ill. 403, *Canal Trustees et al.* v. *The City of Chicago.*

The Ewings did not join in this appeal, but received in January, 1850, the condemnation money, amounting to seven hundred dollars, and at all times, and to sundry persons, expressed their entire approbation of the proceedings, and their concurrence in the action of the Council, one of them, George W. Ewing, repeatedly declaring that he would give this piece of ground for the street, if he could not otherwise

get it, that opening the street would greatly benefit their property, as it would make corner lots of great business value, and made other declarations of like import.

Prior to this, in June, 1848, the Ewings had executed a lease to R. J. Hamilton, of this lot, to expire in 1855, and after these proceedings by the City Council, and the assessment of these damages, the Ewings and Hamilton entered into another agreement, which, after reciting that the city had taken thirty-one feet of this lot for public use, he, Hamilton, should have the use of twenty feet on the north end of the lot as compensation, and rent was paid accordingly.

The proof shows, that early in 1850, immediately consequent upon the action of the commissioners, buildings which had been erected on this alley, were moved back to the line of the street so established by the commissioners, and the ground, including this thirty-one feet, became thenceforward, open to the public, and was used as a public thoroughfare in the same manner and degree as any other street in the city. The street was planked, and afterwards curb walls were built, and it was paved or graveled, and side-walks laid, under notices from the city authorities, and a portion thereof at the expense of Ewing Brothers, and their taxes lessened minus this thirty-one feet, and they knew, all the time, that buildings were being erected and other improvements made, with reference to this new street. In short, it is very apparent, that for five years before the commencement of this suit, the public and individuals acted on the understanding that this was a public street of the city.

On the first question presented, was this land condemned by competent authority, and Ewings' title thereby divested, we have to remark, that the case in 12th Ill. 403, does not show, as reported, that the Ewings had any interest in that case. They do not appear to have been a party to that record in either court, therefore it can not be said, the reversal of the judgment as to the parties to that record, affected them in any way. But admitting they were parties to the proceeding to

condemn this land, they yielded to the confirmatory order of
the court, by which their land was taken from them, and they
received the damages assessed to them. The proceeding was,
in its nature, several against each of the land-owners, though
in form, joint. A judgment injuriously affecting one land-
owner might be beneficial to another, and he, who was injuri-
ously affected, might be relieved by an appeal. What right
would such a party have to initiate proceedings by which a
judgment beneficial to another party, representing a different
interest, should be subjected to the hazard of a reversal, and
in fact reversed and wholly set aside? The court had jurisdic-
tion of the subject matter, and of the persons respectively
interested in the proceedings. Those interests were several
not joint, and, therefore, the finding of the court against any
one party thus situated, not being appealed from, would be
conclusive. Such a proceeding, in the exercise of eminent
domain, is not governed by the same rules which prevail in
ordinary judicial proceedings. In them a joint judgment can
not be reversed as to a part of the defendants, for such a judg-
ment is a unit and indivisible, for the satisfaction of which all
are liable, no one being permitted to discharge himself by
paying a proportionate share. And so of decrees in chancery,
when they are entered against joint defendants, they must
stand as entered, or be reversed in *toto*, except in cases where
it is manifest the interests are several, in which case the same
decree may be affirmed as to a part of the defendants and
reversed as to a part. This is the doctrine of the case of *Enos
et al.* v. *Capps*, 12 Ill. 255. The authority for this doctrine is
found in 1 Barb. Ch. p. 395. It is there held that no party
except the appellant, can be heard in support of the appeal.
Nor can an appellate court reverse a decree against a party
who has not appealed, even though the court below had no
jurisdiction to make the decree against him. If, therefore, any
party who is not included as a co-appellant, in a petition or
notice of an appeal, is desirous of appealing, he must present
a separate petition or give a separate notice, otherwise he will

be precluded from all benefit of the appeal even though the result of it should be to show that the decree was completely wrong, as well against him as against the appellant. *Ib.* 395 and cases cited in notes.

If this be the rule, then the judgment against this particular piece of land is in full force, and the city can claim the benefit of it. This they did do, by paying the amount of the condemnation money to the Ewings, and which they accepted after the alleged reversal of the judgment. Acts more significant and conclusive in their nature, to show acquiescence in the judgment of the court, could not be exhibited.

The plaintiff's counsel puts the question, "did the taking of the money vest a good title in law, when none could otherwise be claimed?" or in other words, does a man effectually convey his land to another seeking to get it from him under void forms of law or without any form of law, if he, by a general agent, or otherwise, barely accepts the money tendered to him by the actor, as a compensation for taking the land? And again he asks, "does the law in any case, and especially does a court of law impose upon such a recipient of the money, the injunction that as against the same adversary he shall be estopped from denying that such adversary became seized of the legal estate, or of any interest claimed by him, merely because the money was thus received?"

On general principles, it may be admitted the bare receipt of money by a vendor of land, will not transfer the title, or give the party paying the money, a right of action to compel a specific performance of the contract of sale. Nor could title be divested under void forms of law, or without any form of law, by the bare acceptance of the money tendered as a compensation for taking the land, for the reason that the party has his action to recover his money back, if the sale is not consummated by deed. This applies to ordinary cases of contracts of sale, and not to cases like this under consideration, where, in the exercise of the right of eminent domain, the public proceed to take private property for the public use, effect a

condemnation of the land, have the damages assessed, and those damages accepted by the owners, and they of their own accord, remove buildings from the ground condemned, aid in opening the street to the use of the public, build side-walks when required by the city authorities, and by other manifestations of the most unequivocal character, declare their assent to the proceedings. The question as put, assumes the proceedings instituted to condemn this land, and the judgment of the court thereon, were void, whereas there *is* nothing in the record to show this, so far as this land, or its owners are concerned. As to them, we hold, the judgment and proceedings were valid, accompanied as they were, by the receipt of the condemnation money, after the judgment had been reversed as to the parties appealing.

But if we are in error in this view of the case, how is it on the second proposition. Was there a dedication of the ground by the Ewings for the use of the city as a street?

To establish this we have the repeated declarations of the Ewings that they had dedicated it as a street. From and after the attempt to condemn the ground by the city, if that was fruitless, the Ewings adjusted the loss of this ground with their tenant then in possession, removed buildings to the line of the new street, erected other buildings on the new line, paid for side-walks, all acts of the most unequivocal character, indicative of an abandonment of all exclusive or individual right to this ground. Now, it seems to us, wholly immaterial what particular motive operated upon the Ewings, to shape their conduct in regard to this ground. It is very evident the conduct of one of them, the principal actor in the matter, was, to say the least, very singular. He wanted the street, and he wanted the damages, he wanted other parties to contribute five hundred dollars to his generosity and public spirit, but finding no one ready so to act, he yielded to the assessment of damages by the commissioners, received seven hundred dollars, two hundred dollars more than he demanded, and then assigned the ground to the use of the public, and submitted to

assessments for side-walks. A dedication is not vitiated because it may have been effected by the payment of money. Some advantage must be supposed to be always in view of a party dedicating property to public use, and if money be the object, the receipt of it, before the act of dedication, can not annul the act itself, or furnish an argument, even, against the act. It is said a dedication is the act of giving or devoting property to some public use. Under the last branch of the definition, is not the property as completely devoted to the public, if its value is paid and received in advance? It still remains the voluntary act of the person giving or dedicating, although influenced by money, thus robbing it of one of its most attractive features, and that is all. It is true there must be an intention to dedicate, but is not that intention quite as strongly manifested by acts induced, if you please, by the receipt of money, as if no money was given, but the unequivocal acts were done. We admit the act of dedication must be free and voluntary—is there any proof apparent in this case, that this act of dedication, by the Ewings, was not free and voluntary? If they acted under compulsion or duress of any kind, who were the actors in producing the one or the other? There was no compulsory process operating against them, for the commissioners did precisely what they wanted them to do, and they quietly pocketed the money, thus gratifying a double desire, one to have the street for the enhancement of the value of their property, the other, pecuniary gain. An act can never be said to have been done on compulsion, when the act done is in accordance with the wishes of the party to whom it is done, and who receives value for it in money.

It is further urged, that there can be no dedication where there is an agreement on the subject.

In support of this proposition reference is made to Angell on Highways, 129; *Barraclough* v. *Johnson*, 8 Ad. & Ellis, 99, (35 Eng. C. L. R. 337,) and *Marcy* v. *Taylor*, 19 Ill. 636.

Angell refers to the case in Adolphus & Ellis, as the foundation for the text, and by reference to that case it will be

seen, that a land-owner had permitted the public to use a part of his land as a road, on the condition they would repair the road—they were to give the cinders, and the inhabitants of the hamlet to carry and spread them. On their ceasing to do this the owner closed up the road and the court held there was no evidence of a dedication. The agreement to repair the road, to furnish and spread the cinders, explained the transaction and showed that the act of the land-owner was not intended as a dedication. To this effect is the case of *Marcy* v. *Taylor*, 19 Ill. 636, where reference is made to this case in 8 Ad. and Ellis, 99.

What shall amount to a dedication, has been often stated by this court. In the case last cited, *Marcy* v. *Taylor*, we held that in every case there must be an intent to dedicate, and no particular time is necessary for evidence of dedication; it is not like a grant, presumed from length of time. If the act of dedication be unequivocal, it may take place immediately. When ground is dedicated to the public and accepted by them, it then becomes a highway, and acceptance may be shown by user by the public, as by travel, or by the acts of the public officers in repairing and keeping it up.

We now say further, that a dedication is to be proved not alone by deed, but by matter *in pais*, consisting of the acts and accompanying declarations of the owners of the land alleged to be dedicated. Such acts coupled with such evidence of acceptance by the public as we have alluded to, make out a case of dedication. Testing this case by these principles, can there be a clearer case of dedication made out than this? Are not the acts and declarations of the Ewings of the most unequivocal character, indicating a clear intention to devote this ground to the public, and are not the evidences of acceptance by the public, equally clear and conclusive? Crowds of people, from the day New North Water street was established, until the day of the commencement of this suit, and thenceforward, to this time, have filled that highway—the city has paved it, and laid side-walks, and adjoining property owners assessed to

pay for them, and among them, for side-walks, the Ewings, under notices left with their tenants. No clearer case of dedication could be made out, and none coming more completely within the principles laid down by this, and other courts, governing such cases. There is no conflict in the many cases to which reference might be made.

*City of Cincinnati* v. *White's Lessee*, 6 Peters, 431. In this case it is said no particular form or ceremony is necessary in the dedication of land to public use. All that is required is the assent of the owner of the land and the fact of its being used for the public purposes intended by the appropriation. In *Hunter* v. *The Trustees of Sandy Hill*, 6 Hill, 407, it was said, dedication as the term is used in reference to this subject, is the act of devoting or giving property for some proper object and in such manner as to conclude the owner. The law which governs such cases is anomalous. Under it, rights are parted with and acquired in modes and by means unusual and peculiar. A dedication may be made without writing, by act *in pais* as well as by deed. It is not at all necessary the owner should part with the title which he has, for dedication has respect to the possession and not the permanent estate. Its effect is not to deprive a party of title to his land, but to estop him, while the dedication continues in force, from asserting that right of exclusive possession and enjoyment which the owner of property ordinarily has. The principle upon which the estoppel rests is, that it would be dishonest to reclaim at pleasure, property which has been solemnly devoted to the use of the public, or in furtherance of some charitable or pious object. The law therefore will not permit any one thus to break his own plighted faith—to disappoint honest expectation thus excited, and upon which reliance has been placed.

In *Denning* v. *Roome*, 6 Wendell, 656, it was said, it has not yet been determined what length of time individual property must be used as a public way to create a presumption of a dereliction of it to the public, and the reason why no precise time has been fixed, probably is, that the presumption

does not depend alone on the length of time the use continues—other circumstances are to be brought into consideration, which may extend or contract the period at which the presumption attaches.

In *Godfrey* v. *The City of Alton*, 12 Ill. 33, this court held that the statute of frauds did not apply to the dedication of ground to the public. Such a dedication may be made by grant or other written instrument, or it may be evidenced by acts and declarations without writing. No particular form is required to the validity of a dedication. It is purely a question of intention. The authorites cited show that dedications have been established in every conceivable way, by which the intention of the dedication could be evinced. And great importance is frequently attached to the fact, that investments or improvements have been made either by individuals or the public, in reference to a dedication, and with the knowledge of the proprietor.

This court also held, in *Warren* v. *The President and Trustees of the Town of Jacksonville*, 15 *Ib*. 236, that the public is an ever existing grantee capable of taking dedications for public uses, and its interests are a sufficient consideration to support them. The mode of making dedications is immaterial. They are not within the statute of frauds and are good by parol. The intention of the party manifested by express consent or acquiescence in the user will govern in determining whether it be a dedication. So in *Dimon* v. *The People*, 17 *Ib*. 416, this court said juries may infer a dedication from length of user, and from acquiescence by the owners. To the same effect is the case of *Alvord* v. *Ashley*, *Ib*. 363. This case also holds that a party will be estopped from denying a dedication, by the acquiescence in it of his grantors. So in *Manley et al.* v. *Gibson*, 13 *Ib*. 312, this court said, a dedication of ground to public uses may be made in other ways than by the making and recording of a town plat. In the case of a valid plat, the title of the ground set apart for public purposes is held by the corporation for the use and benefit of

the public; in the case of a dedication by a different mode, the fee continues in the proprietors burdened with the public easement.

The plaintiff here, being the grantee of Ewing, he is estopped by Ewing's act and acquiescence in the public use.

In *Waugh* v. *Leech*, 28 *Ib.* 488, this court said again, that dedication was purely a question of intention, and that a dedication may be made by a survey and plat alone without any declaration either oral or on the plat, when it is evident from the face of the plat, that it was the intention to set apart certain ground for the use of the public.

The unexplained, and unexplainable conduct of C. W. Ewing, in including in his bill for partition, this ground, and receiving his share of the money paid for it by the plaintiff in error at the sale under the decree in the partition suit, however it may affect Ewing, can in no degree weaken the right of the public to the use of the ground on the strength of the prior dedication. The right of the public had attached—they had accepted the dedication, and no subsequent act of Ewings could deprive them of their right. The act of the Ewings in the first instance being so unequivocal as to their intention to dedicate this ground to public use, neither of them could afterwards disparage the act. Nor could they, or either of them by their act, destroy the expectations of those who had invested any portion of their means, on the plighted faith of these owners, that this ground should be forever devoted to the public use.

The plaintiff in error is privy in estate with Ewing, and he is bound by the act of his grantors, and of which he had full knowledge before he purchased.

From what has been said, it seems unnecessary to discuss the last question made.

The judgment of the court below must be affirmed.

*Judgment affirmed.*