SCARBOROUGH PROPERTIES CORPORATION, Respondent, v. VILLAGE OF BRIARCLIFF MANOR, Appellant.

Argued April 18, 1938; decided July 7, 1938.

*Herbert C. Gerlach* and *Joseph Reeback* for appellant.
The failure of defendant's boards and officials to observe
essential statutory requirements rendered their actions
in connection with plaintiff's offer *ultra vires* and void.
(*Matter of City of New York* [*E. 177th St.*], 239 N. Y.

119; *Mark* v. *Village of West Troy*, 76 Hun, 162; *Allen* v. *Smith*, 76 Misc. Rep. 40; 151 App. Div. 920; *Lyddy* v. *Long Island City*, 104 N. Y. 218; *Matter of Social I. E. Assn.* v. *Taylor*, 268 N. Y. 233; *Gwynne* v. *Board of Education*, 259 N. Y. 191; *Manhattan Co.* v. *Kaldenberg*, 165 N. Y. 1; *Ansonia B. & C. Co.* v. *New Lamp-chimney Co.*, 53 N. Y. 123; *Donovan* v. *City of New York*, 33 N. Y. 291; *People ex rel. Tupper Lake W. Co.* v. *Sisson*, 75 App. Div. 138; 173 N. Y. 606; *Matter of Niland* v. *Bowron*, 113 App. Div. 661; 193 N. Y. 180; *Kramrath* v. *City*, 127 N. Y. 575.) No contractual liability can be founded on plaintiff's offer, since it is uncertain as to time of payment and attempts to bind in advance the legislative action of future boards. (*Varney* v. *Ditmars*, 217 N. Y. 223; *Wells* v. *Village of East Aurora*, 236 App. Div. 474.) The evidence does not as a matter of law warrant the conclusion that plaintiff's offer was accepted by the village. (*Lord & Burnham Co.* v. *City of New York*, 251 N. Y. 198; *N. Y. C. Employees' Retirement System* v. *Eliot*, 267 N. Y. 193; *People ex rel. Sweet* v. *Board of Supervisors*, 101 App. Div. 327; *Mayor* v. *N. Y. C. & H. R. R. R. Co.*, 69 Hun, 324; *Miller* v. *Mayor*, 3 Hun, 35; *Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310; *Cameron* v. *Wright*, 21 App. Div. 395; 163 N. Y. 586.)

*Joseph F. Curren* for respondent. The village board of trustees had ample power under the Village Law (Cons. Laws, ch. 64) to acquire plaintiff's lands and sewer and water improvements for municipal purposes. The acquisition thereof is not *ultra vires*. (*Port Jervis Water Co.* v. *Village of Port Jervis*, 151 N. Y. 11; *Beckrich* v. *City of North Tonawanda*, 171 N. Y. 292; *Hatch* v. *Village of Monticello*, 184 App. Div. 450; 227 N. Y. 644; *Mead* v. *Turner*, 134 App. Div. 691.) The village has accepted the plaintiff's deed and has ratified the conveyance of plaintiff's lands and improvements. (*Moore* v. *City of Albany*, 98 N. Y. 396; *Vermeule* v. *City of*

*Corning*, 186 App. Div. 206; 230 N. Y. 585; *Beckrich* v. *City of North Tonawanda*, 171 N. Y. 292.) The village may not take and keep plaintiff's property and improvements without just compensation. (*McKechnie Brewing Co.* v. *Trustees of Village of Canandaigua*, 15 App. Div. 139; 162 N. Y. 631; *Port Jervis Water Co.* v. *Village of Port Jervis*, 151 N. Y. 111; *Nelson* v. *Mayor*, 63 N. Y. 535.)

LEHMAN, J. The defendant is a village of the third class, organized under the Village Law (Cons. Laws, ch. 64) of the State of New York. In November, 1926, the plaintiff, which owned a parcel of land in the village, executed and delivered to the clerk of the village a deed conveying to the defendant the fee of three roads which the plaintiff had constructed upon its land, together with a sewer system, water pipes and fire hydrants which the plaintiff had installed in the street. The plaintiff, claiming that the conveyance was made pursuant to an offer to dedicate the roads and the improvements therein, upon the understanding or condition that the defendant would reimburse the plaintiff for the cost of said improvements, and that the defendant accepted the offer and agreed that the fair cost of replacement and the fair valuation of the improvements was the sum of $50,438.33, has brought this action to recover " the said purchase price, conditioned upon which the said conveyance was made and delivered." A judgment in favor of the plaintiff has been unanimously affirmed by the Appellate Division.

The evidence establishes, and the referee found, that the plaintiff, Scarborough Properties Corporation, prior to 1926 constructed upon a parcel of land in the village of Briarcliff Manor, which it owned and developed, three private roads known as " River Road," " Woodlea Lane," and " Creighton Lane." In the bed of the roads the plaintiff constructed and laid a drainage system, water mains, fire hydrants and sewer lines. In April,

1926, the plaintiff sent to the Trustees of the village the following letter:

"*April 7, 1926.*

"TRUSTEES OF THE VILLAGE OF BRIARCLIFF MANOR, Briarcliff Manor, N. Y.

"DEAR SIRS: The undersigned hereby offers to dedicate to the Village of Briarcliff Manor the road now known as the River Road, the Woodlea Lane and the Creighton Lane, all owned by the undersigned. In addition to the road and lanes themselves, we hereby offer to dedicate also the sewer system, water pipes and fire hydrants, now installed in the said road and lanes, with the understanding that we are to be reimbursed for the cost of the same, as follows:

Sewer and drainage system complete.........$54,967 61
Water Pipes, 18 Fire Hydrants............. 33,965 77

less a depreciation of two per cent, as soon as the Village of Briarcliff Manor can arrange to make payment of said amount.

"Yours very truly,

"SCARBOROUGH PROPERTIES CORPORATION,
"By H. E. BENEDICT,
"*Vice-President.*"

The minutes of the Board of Trustees, held on April 13, 1926, state that this letter was read at that meeting and "subject to the checking of the figures with regard to the cost, and the approval of the Municipal Board, the President was empowered to proceed with the matter."

The minutes of the meeting of December 14, 1926, contain an entry: "Scarborough Properties Corporation: It was reported that deed had been received from them as per previous conferences covering River Road, Woodlea Lane and Bishop Creighton Lane, which it was decided to hold in abeyance until such time as Mr. Valentine and Mr. Manahan had checked the cost of the water and sewer lines to be taken over with this property."

The deed was recorded in November, 1927. Prior thereto Mr. Valentine, the defendant's engineer, and Mr. Manahan, its Superintendent of Water and Sewers, had investigated the cost of the sewer drainage system, water pipes, hydrants, etc., and had reported that the sum of $50,438.33 represented their fair and reasonable cost. The minutes of a meeting held in January, 1928, of the Municipal Board of the defendant village established pursuant to section 63 of the Village Law, contain the following entry: " Scarborough Properties Corporation. The Secretary reported with reference to the conference with Mr. Slaker and Mr. Chapin in relation to the cost of the water and sewer lines in their property which they had requested the Village to take over and stated that they had agreed upon the following figures namely cost of sewer lines $20,815.40, water lines $29,622.93 or a total of $50,438.33, which upon motion duly seconded the Board agreed to accept and to take them over in turn with other lines less a depreciation of 2% per annum."

In February, 1928, the Clerk of the village notified the plaintiff in writing of the action taken at the meeting of the Municipal Board, and requested the plaintiff to confirm the amount fixed as the cost of the improvements. The plaintiff did so promptly thereafter. Since that time the village has taken possession of the roads and has collected the charges which have accrued from the use thereof by owners of property abutting thereon.

The defendant village has only those powers which the Legislature has conferred upon villages of the third class, and the powers so conferred upon the village may be exercised only in the manner provided by the Village Law, and through the officers authorized by the statute to act for the village. The power of a village to enter into contracts and to incur financial obligations is subject to statutory conditions and restrictions intended to protect the inhabitants and taxpayers against ill-considered or

extravagant action. Though the conveyance of plaintiff's property was made upon the understanding that payment for the cost of improvements as agreed upon should be made within a reasonable time thereafter and though the defendant has no right, either legal or moral, to enjoy the property without paying for it in accordance with the understanding or condition upon which the conveyance was made, yet the plaintiff is not entitled to recover the agreed price unless the deed was accepted and the obligation to pay incurred in the manner provided by the statute and by the officers of the village authorized to bind the village. If the acts of the village officers exceeded the powers of those officers, the plaintiff may resume possession of its property. It cannot compel the defendant to abide by an agreement made through agents without power to bind the village.

The Village Law, article 6, regulates the exercise of the powers of villages and their officers in regard to " Streets, sidewalks and public grounds." Section 144 provides that: " An owner of land in a village who has laid out a street thereon may dedicate such street, or any part thereof, or an easement therein, to the village for a public street, or an owner may dedicate for such purpose land not laid out as a street. Upon an offer in writing by the owner to make such a dedication, the board of trustees shall meet to consider the matter; and it may, by resolution, determine to accept a dedication of the whole or any part of the land described in such offer or the whole or any part of such street, to be described in such resolution. Upon the adoption of such a resolution the owner may execute and deliver to the village clerk a proper conveyance of the land to be dedicated. The board of trustees, may by resolution, accept the conveyance, and the conveyance, shall thereupon be recorded in the office of the county clerk. Upon the acceptance of the conveyance the land described therein shall become and be a public street of the village. No street less than two rods

in width shall be accepted by dedication, unless the resolution adopting same is passed by unanimous vote of the board of trustees. All offers of dedication must be entered at length in the minutes of the board of trustees."

The land for a street improvement can be acquired only by purchase or condemnation unless the owner of the land chooses to dedicate it to the village for a public street. Where land is acquired by purchase or condemnation the statute provides a method of procedure calculated to prevent ill-considered or extravagant action by the public authorities. In this case, concededly, there was no compliance with these provisions and there was no valid *contract* made for the purchase of the plaintiff's property. Unless section 144 of the Village Law gives to the village authority the power to bind the village to pay a stipulated sum of money by accepting a dedication made upon the understanding or agreement that the village will pay such sum, the plaintiff has no cause of action.

" Dedication is essentially of the nature of a gift. There can be no gift without a surrender of the subject by the one and acceptance of it by the other." (*Flack* v. *Village of Green Island,* 122 N. Y. 107, at p. 113.) The conveyance of land to a village upon the agreement of the village to pay for it constitutes a sale of land, not a gift. True, the motive that induces an owner of land to dedicate it for a public use is not always a desire to confer a benefit upon the public. An owner who dedicates part of his land for use as a public street may expect to derive advantage or profit from the public user. The court does not inquire into the motives that led an owner to surrender or convey his property. The test of the validity of a dedication, like the test of the validity of other gift or transfer, is, primarily, whether there has been complete relinquishment on the one side and acceptance on the other. If the act was voluntary title passes even though the owner was induced to act by hope of indirect

benefit or even by receipt of money. (*Rees* v. *City of Chicago*, 38 Ill. 322. Cf. H. W. Chaplin, "The Law of Dedication in its Relation to Trust Legislation," 16 Harvard Law Review, 329, at p. 335.) Where, however, a person conveying land for a public purpose seeks to compel payment of the *price* of such conveyance, he must prove a valid agreement to pay such price. An obligation to pay does not arise merely from acceptance of a voluntary dedication.

It is said, however, that section 1-a of the Village Law confers upon every village power "to take by gift, grant, bequest and devise and hold real and personal estate absolutely or in trust for any public use * * * *upon such terms or conditions as may be prescribed by the grantor or donor and accepted by said corporation*" and that, in the exercise of that power, the village authorities could place upon the village an obligation to pay for the property conveyed by accepting a deed of conveyance which the plaintiff had offered to give only upon condition that payment of a stipulated price be made for it. The power conferred upon a village *to hold* property upon such terms and conditions as may be prescribed by the grantor does not imply a power in a village board to accept an *offer* to dedicate land absolutely to a public use upon the promise of the village that it will pay for such dedication. A grantor may prescribe the terms and conditions upon which the village shall hold property, and breach of terms and conditions prescribed by a grantor of land and accepted by the grantee may give rise to a right of re-entry by the grantor or his heirs. Acceptance of an offer to convey, upon the understanding that payment will be made, gives rise to a contract of purchase and sale, but such a contract, binding upon a village, can be made only by officers clothed with the power to make contracts of purchase and subject to the safeguards and restrictions with which the exercise of such power is hedged by statute. The plaintiff cannot recover the

stipulated purchase price of the property without proving a valid agreement to make payment. The rights of the parties are not affected by the circumstance that the plaintiff chose to call its offer an offer to dedicate instead of an offer to convey. The power to accept a dedication made under section 144 of the Village Law does not include a power to agree to pay for what we have said " is essentially of the nature of a gift."

By chapter 708 of the Laws of 1934 the Legislature has added an additional subdivision, 61-a, to section 89, which defines the general powers of boards of trustees. The new subdivision confers, in express terms, upon the board of trustees of a village power " to accept the dedication of lands in the village for a public street or streets in the village on condition or *agreement* that the village will reimburse the owners of the street or streets so dedicated as public streets, for sewers, water mains and fire hydrants, or any of such improvements, constructed in such dedicated lands at private expense." Though at the time when the Board of Trustees attempted to make the contract upon which the plaintiff's cause of action is based it was without power to bind the village, the amended statute in express terms authorizes the Board of Trustees now to ratify such dedication and agreement to make such reimbursement. The power which the Legislature has now conferred upon the Board of Trustees to make or ratify such an agreement is, however, not absolute. It is subject to a permissive referendum. The village is not bound to make payment for the land conveyed unless a contract is made as provided in the statute.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; CRANE, Ch. J., dissents.

Judgments reversed, etc.