338

VILLAGE OF TARRYTOWN, Appellant-Respondent, v WOOD-LAND LAKE ESTATES, INC., Respondent-Appellant. (Action No. 1.)

WOODLAND LAKE ESTATES, INC., et al., Respondents-Appellants, v VILLAGE OF TARRYTOWN, Appellant-Respondent, et al., Defendants. (Action No. 2.)

SPA HOLDING CORP., Respondent-Appellant, v VILLAGE OF TARRYTOWN, Appellant-Respondent. (Action No. 3.)

Second Department, November 14, 1983

APPEARANCES OF COUNSEL

*William F. Plunkett, Jr.,* for appellant-respondent.

*Bleakley Schmidt, P. C.* (*Maurice F. Curran* of counsel), for respondents-appellants.

OPINION OF THE COURT

LAZER, J.

At issue on these cross appeals are rights of ownership, possession and compensation relative to certain roads, sewer mains and water mains in a subdivision in the Village of Tarrytown. The dispute has endured for almost a generation and its resolution now depends on principles underlying the doctrines of estoppel, dedication, easement by prescription and inverse condemnation.

On June 21, 1948, Woodland Lake Estates, Inc. (Woodland), the owner of acreage it intended to subdivide in the Village of Tarrytown, entered into a contract with the village in which it agreed to construct the subdivision roads, dedicate them to the village and improve the areas to be dedicated by installing sewer mains, water mains, drainage facilities and hydrants. In return, the village agreed to accept the dedication and to make specified payments to Woodland for each house constructed on the tract plus 50% of the cost of rock excavation and retaining wall construction. Between 1948 and 1958, Woodland filed seven separate subdivision maps and after completion of each section — except for two — deeded the roads to the village. After each dedication, the village maintained and repaired the roads and the mentioned utilities in the subdivision. The village refused to accept title to roads in two of the sections alleging that the road construction was substandard. Title to the road known as Mallard Rise located in section 6 was acquired by the village independently of the 1948 agreement when a third party made the conveyance.

The litigative phase of the dispute commenced after the village refused to make the payments required under the contract. Woodland sought arbitration under the terms of the contract but was met with the contention that the contract was illegal because it had not been preceded by a referendum (see Village Law, former § 128-b). Arbitration

was stayed by a judicial determination dated June 30, 1964, which declared that the contract was invalid. The determination was affirmed on appeal (see *Village of Tarrytown v Woodland Lake Estates*, 24 AD2d 618, affd 19 NY2d 660).

After the affirmance of the judicial declaration of invalidity, Woodland repudiated its offer of dedication and demanded that the village convey back to it the roads and utilities within the subdivision. When the village refused this demand, Woodland erected a barrier across one of the streets in December of 1970. The village responded by commencing an action seeking a declaration that it owned the subdivision streets and obtained an order restraining Woodland from blocking access to the streets. Woodland counterclaimed for a judgment declaring itself to be the owner of the subdivision streets and utilities. In a second action, Spa Holding Corporation, Woodland's successor in interest, sought the same relief as Woodland sought in its counterclaim in the first action and the village counterclaimed for a judgment identical to its demand for relief in the first action. Another action, brought by Woodland and Spa Holding Corporation against the owners of property adjoining the subdivision, was subsequently rendered moot when the property was sold. After a nonjury trial, Special Term ruled that Woodland was entitled to resume possession of certain streets and utilities since its offer of dedication derived from the invalid 1948 contract, that the village acquired a public easement by adverse use of certain streets it completed prior to 1955 that were never conveyed to the village, that property owners in the subdivision had acquired private easements for access, water and sewer usage, and that under a theory of inverse condemnation Woodland was entitled to compensation from the village for certain of the roads and underlying utilities in the subdivision.

Dedication is the intentional donation of land by its owner for a public use and essentially it is in the nature of a gift (*Scarborough Props. Corp. v Village of Briarcliff Manor*, 278 NY 370; *Flack v Village of Green Is.*, 122 NY 107; *Domus Dev. Corp. v Monroe County Pure Water*, 84 AD2d 929). Where, however, a person conveys land for a

public purpose upon the agreement of the municipality to pay for it, the conveyance constitutes a sale of land (*Scarborough Props. Corp. v Village of Briarcliff Manor, supra,* pp 377-378). Since the 1948 agreement subsequently was declared invalid for the same reasons as were stated in *Scarborough* (*supra*), there was neither a valid sale of land nor a dedication by Woodland and it was entitled to resume possession of the property (see *Scarborough Props. Corp. v Village of Briarcliff Manor, supra,* p 376). Under these circumstances, the fact that Woodland acquiesced in the public use of the roads prior to the judicial declaration of invalidity cannot estop Woodland from denying that a dedication took place, since its offer to dedicate was conditioned on the performance of a contract which was invalid from its inception and which was subsequently judicially declared to be invalid (see 11 McQuillin, Municipal Corporations [3d ed], § 33.63; cf. *Hubbard v City of White Plains,* 18 AD2d 674; *Gewirtz v City of Long Beach,* 69 Misc 2d 763, affd 45 AD2d 841).

Nevertheless, we accept in part Tarrytown's contention that it acquired an easement by prescription as a result of its maintenance and repair of the roads and utilities within the subdivision and by the public use of those facilities between the date of completion of each section (1948 to 1958) and the commencement of the first of these actions in 1970. Since public and village maintenance of the streets and utilities commenced prior to the effective date of the CPLR in 1963, the 15-year prescription period under section 34 of the former Civil Practice Act governs (see *Reiter v Landon Homes,* 31 AD2d 538). With respect to the roads never conveyed to the village and completed prior to 1955, we agree with Special Term that the village acquired an easement by prescription through its maintenance, repair and control of the roads plus their continuous and uninterrupted use by the public (see *Palmer v Palmer,* 150 NY 139; *Impastato v Village of Catskill,* 55 AD2d 714). In addition, the village established prescriptive rights to the utilities underlying these roads by its continuous use, maintenance and control over these facilities (see *Village of Schoharie v Coons,* 34 AD2d 701, affd 28 NY2d 568; *Greenwood v Rahill,* __ RI __, 412 A2d 228; Ann., 55 ALR2d 1144; 11

McQuillin, Municipal Corporations [3d ed], § 31.12). While Special Term's interlocutory judgment recognized these prescriptive rights, the final judgment failed to do so, and we now modify the final judgment in this respect. As to the streets conveyed to the village by deed, however, no prescriptive easement was acquired since maintenance of those streets and underlying utilities by the village was not hostile to Woodland but was pursuant to an agreement which had not yet been invalidated (see *Di Leo v Pecksto Holding Corp.,* 304 NY 505; *Hinkley v State of New York,* 234 NY 309; *Matter of Department of Public Parks,* 73 NY 560).

Despite Woodland's agreement in 1948 to convey or dedicate the street rights of way to the village, in some cases it also deeded title to the center line of these rights of way to purchasers of abutting lots. As a grantor purporting to convey property at a time when it did not own the property, but later reacquiring title to the property, Woodland is estopped from asserting against its grantees and their successors the claim that it did not have title to the roadbeds when it conveyed them to these abutting landowners (see *Fries v Clearview Gardens Sixth Corp.,* 285 App Div 568; 2 Warren's Weed, New York Law of Real Property [4th ed], Estoppel, § 2.04; 21 NY Jur, Estoppel, § 8). Since the abutting owners have title to the center of the street to the extent reflected in the deeds received from Woodland, they also obtained title to the subsurface (see *Appelton v City of New York,* 219 NY 150; 3 Tiffany, Real Property [3d ed], § 925; 10 McQuillin, Municipal Corporations [3d ed], § 30.38). Even though the deeds were silent as to the utility lines lying underneath these lots, these lines constitute fixtures annexed to the real estate and were therefore conveyed with the land when Woodland deeded fee title to the center line to abutting lot owners (see *Cirillo v Wyker,* 51 AD2d 758; *Matter of Nassau County [Lido Beach Sewage Collection Dist.],* 40 Misc 2d 384). Therefore, the judgment must also be modified to reflect the fact that Woodland is not entitled to any award for utilities underlying the roadbeds that have been conveyed to lot owners.

Finally, since it was the record owner of certain of the rights of way when it took possession of them, the village argues that it should not be required to compensate Wood-

land under a theory of inverse condemnation. This contention ignores the invalidity of the agreement under which the village obtained title to the streets in question and the duty of the village to restore to Woodland what it received by virtue of the agreement (see *Holdeen v Rinaldo,* 28 AD2d 947; Restatement, Restitution, § 66; Dobbs, Remedies, § 4.8, p 298). While Woodland's right to return of the property accrued in 1964 when the contract was first declared invalid, the village has not raised the Statute of Limitations as a defense. *De facto* appropriation, or inverse condemnation, is based on a showing that "the government has intruded onto the citizen's property and interfered with the owner's property rights to such a degree that the conduct amounts to a constitutional taking requiring the government to purchase the property from the owner" (*O'Brien v City of Syracuse,* 54 NY2d 353, 357; see *City of Buffalo v Clement Co.,* 28 NY2d 241; Magavern, The Evolution and Extension of the New York Law of Inverse Condemnation, 24 Buff L Rev 273). When it continued to utilize the property after the rightful owner demanded its return, the village conducted itself as if it possessed an affirmative easement over the roads and thus interfered with Woodland's property rights to the extent that it became a repeated trespasser. Since the trespasser was a governmental body with condemnation powers, there was a compensable taking of private property (see *O'Brien v City of Syracuse, supra,* p 357; Dunham, Griggs v Allegheny County in Perspective: Thirty Years of Supreme Court Expropriation Law, 1962 Supreme Ct Rev 63, 87; Humbach, A Unifying Theory for the Just-Compensation Cases: Takings, Regulation and Public Use, 34 Rutgers L Rev 243, 262). Tarrytown's actions with respect to the property meet the essential criteria of the physical entry test since the entry was continuous and demonstrated dominion and control over the property (see *City of Buffalo v Clement Co.,* 28 NY2d 241, 255, *supra;* Note, De Facto Takings and the Pursuit of Just Compensation, 48 Fordham L Rev 334, 338). We agree with the trial court that the date of appropriation should be fixed as of February 27, 1967, when Woodland unsuccessfully demanded the return of the property.

Accordingly, there should be a modification of the judgment by (1) deleting from the first decretal paragraph the provision that Woodland is entitled to resume possession and ownership of all utilities in the subdivision and substituting a provision granting Woodland possession and ownership of all utilities except those lying underneath Mallard Rise, Quarry Lane and Oak Rise, and (2) adding to subdivision "B" of the fourth decretal paragraph a provision that Woodland's property rights do not extend to utilities underlying the roads abutting lots conveyed by instruments which also granted title to the center line of the roadway.

MOLLEN, P. J., WEINSTEIN and RUBIN, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered December 11, 1981, modified, on the law, by (1) deleting from the first decretal paragraph the provision that Woodland is entitled to resume possession and ownership of all utilities in the subdivision and substituting a provision granting Woodland possession and ownership of all utilities except those lying underneath Mallard Rise, Quarry Lane and Oak Rise, and (2) adding to subdivision "B" of the fourth decretal paragraph a provision that Woodland's property rights do not extend to utilities underlying the roads abutting lots conveyed by instruments which also granted title to the center line of the roadway. As so modified, judgment affirmed, without costs or disbursements.