■ MARGARETHE CLEMPNER et al., Appellants, v TOWN OF SOUTHOLD et al., Respondents.—In an action, *inter alia,* (1) for a judgment declaring null and void a resolution of the defendant Town Board of the Town of Southold enabling the defendant Board of Trustees of the Town of Southold to issue certain mooring permits and ordering the removal of any existing moorings, and (2) to recover damages for trespass and inverse condemnation, the plaintiffs appeal from an order and judgment (one paper) of the Supreme Court, Suffolk County (Cannavo, J.), entered December 3, 1987, which, upon granting the defendants' motion for summary judgment dismissing the amended complaint, is in favor of the defendants and against them.

Ordered that the order and judgment is affirmed, with costs.

Prior to 1959, Gull Pond, a tributary of Gardiners Bay, was landlocked and not accessible by boats from the bay. At the request of certain property owners possessing land which abutted the pond, Suffolk County agreed to deepen and widen the bed of Gull Pond and to dredge an approach from Gardiners Bay into the pond. The Army Corps of Engineers notified all adjacent property owners and the general public of the dredging project. The Town of Southold entered into an "Assurance Agreement" with Suffolk County containing a hold-harmless provision immunizing the town from claims for damages resulting from the dredging operation. The dredging was conducted in December 1959. When the dredging was completed, a narrow jetty separated the pond from the bay and the dredged channel, permitting passage between the adjoining bodies of water. In February 1960 one adjacent owner, a Michael Mastrosimone, the predecessor in title to the plaintiffs Clempner and Mandel, asserted a claim against Suffolk County alleging that during the dredging operation the county "appropriated removed, took, dredged and used land belonging to [him]". Pursuant to the terms of the hold-harmless agreement, the county entered a boundary line agreement with Mastrosimone in 1968 settling his claim. The agreement fixed the boundary line of the Mastrosimone property under the waters of Gull Pond.

Pursuant to an agreement dated June 8, 1971, between the State of New York and the Town of Southold, the Norman E. Klipp Marine Park was proposed. The funds necessary to construct the park were to be provided by the State and, upon the completion of the facility, the park would be maintained and operated by the town without restrictions as to the residences of its users. Paragraph 4 (B) provides that; "The public shall have the right to ingress and egress from the premises at all times for the launching and/or hauling of their boats, the parking of their cars *and such other purposes not inconsistent with the purpose of this agreement as set forth herein.* However, the [Town] may establish the daily hours of operation and may close and prohibit entry to the site during such hours between sunset and sunrise as may be desired, subject to approval of such operational arrangement by [the New York Office of Parks and Recreation, Executive Department]" (emphasis supplied). The park, completed in 1972, is a boat launching facility. By 1981, the park was entirely bulkheaded.

During the mid-1970's, the Board of Trustees of the Town of Southold issued approximately 25 permits for off-shore moorings within Gull Pond. In 1979, the Board of Trustees sought to issue a maximum of 10 mooring permits along the southerly half of the bulkheading forming the westerly line of the park. The boats occupying the proposed moorings would be secured to an off-shore stake placed approximately 25 feet from the bulkhead. Access to each moored boat would be achieved by utilizing a line and pulley attached to the bulkhead. Permits were issued as applications were received, without resorting to a lottery.

Objections to the issuance of permits for the 10 moorings were raised in September 1979. On March 11, 1980, the Town Board issued the following resolution: "Resolved that the Southold Town trustees be authorized to issue mooring permits in Gull Pond Inlet with the right of the permittee to secure the boat by a line attached to the bulkhead in such manner as the Trustees shall direct, and that such permission be limited to the southerly one-half of said bulkhead".

The plaintiff Clempner originally served a summons and complaint dated May 15, 1981. The most recent amended complaint, dated February 22, 1985, joining the plaintiffs Mandel and Conant, alleges 10 causes of action seeking declaratory and injunctive relief as well as damages relating to, essentially, the issuance of the mooring permits and the purported breach of the 1960 boundary line agreement due to

the continued dredging of the pond and inlet. The Supreme Court granted the defendants' motion for summary judgment.

At the outset, we find that each of the causes of action questioning the procedures employed by the defendants in adopting the March 11, 1980 resolution are barred by the four-month Statute of Limitations period prescribed by CPLR 217, inasmuch as each of these claims could have been resolved through a proceeding pursuant to CPLR article 78. The plaintiffs may not circumvent the applicable four-month limitations period by seeking declaratory or injunctive relief *(see, Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 202-203; *Weinstein Enters. v Town of Kent,* 135 AD2d 625, 627; *see also, Association for Improvement in Mohegan v Town of Cortlandt,* 137 AD2d 742). The plaintiffs assert that the defendants have failed to comply with ECL article 8 (hereinafter SEQRA), Town of Southold Code § 97-28 (hereinafter the Wetlands Law) and Town Law § 130 (17) (2). Since the underlying dispute involving these claims is directed at the review procedures followed in the enactment of the March 11, 1980 resolution, rather than its substance, the plaintiffs' present claims could have been asserted in a proceeding pursuant to CPLR article 78, commenced within four months of the enactment of the resolution. The original summons and complaint was not served until May 1981 at the earliest, which was more than one year after the enactment of the resolution. Consequently, these causes of action should have been dismissed as time barred.

Additionally, we conclude that the plaintiffs do not have standing to assert private causes of action based on the purported statutory violations. While "[a] petitioner need only show that the administrative action will in fact have a harmful effect on [him] and that the interest asserted is arguably within the zone of interest to be protected by the statute" *(Matter of Dairylea Coop. v Walkley,* 38 NY2d 6, 9; *see, Matter of City of New York v City Civ. Serv. Commn.,* 60 NY2d 436, 442; *Matter of Brindisi v University Hosp.,* 131 AD2d 667, 668), the "[a]ggrievement warranting judicial review requires a threshold showing that a person has been adversely affected by the activities of defendants * * * or—put another way—that it has sustained special damage, different in kind and degree from the community generally" *(Matter of Sun-Brite Car Wash v Board of Zoning & Appeals,* 69 NY2d 406, 413). The plaintiffs assert (1) that the defendants breached the 1971 lease by constructing a "Marina" and that this constitutes an ultra vires act, (2) that the issuance of the permits violated

PRHPL 17.09 by disposing of public property without legislative approval, and, (3) that the defendants have "monopoliz[ed]" the public facility in contravention of Town Code § 32-21. The plaintiffs contend further that these alleged violations have been "to the detriment of the general public at large and [to] future generations". The plaintiffs' SEQRA and Wetlands Law causes of action should have been similarly dismissed due to lack of standing. Their opposing papers do not specifically aver or establish the manner in which the defendants' failure to adhere to these environmental review requirements have caused them injury in fact. Indeed, they merely allege that the bulkhead would create a danger to the permitees.

In any event, we find that the amended complaint was properly dismissed as a matter of law. First, it must be observed that the use clause in the 1971 lease, which expressly provides that the park would be used as a boat launching facility "and such other purposes not inconsistent [therewith]", does not restrict the town from adding bulkhead moorings provided they do not interfere with launching ramp ingress and egress (cf., Dennis & Jimmy's Food Corp. v Milton Co., 99 AD2d 477, affd 62 NY2d 613). The record establishes that the 10 moorings at issue are located at the end of the jetty opposite the ramps. The plaintiffs have not alleged, let alone demonstrated, that a question of fact exists regarding the positioning of the bulkhead moorings vis-à-vis the launching ramps. Moreover, the defendants are correct in asserting that the issuance of the permits facilitates and fosters public use of the park and thus does not offend PRHPL 17.09 or Town Code § 32-20. Finally, the plaintiffs' allegations in support of their SEQRA and Wetlands Law claims are dehors the record and are otherwise insufficient to raise a question of fact concerning whether the 10 bulkhead moorings will have a significant impact upon the Gull Pond environment. Accordingly, these causes of action were properly dismissed.

We turn now to the causes of action allegedly based on trespass and inverse condemnation. Inverse condemnation, or de facto appropriation, "is based on a showing that 'the government has intruded onto the citizen's property and interfered with the owner's property rights to such a degree that the conduct amounts to a constitutional taking requiring the government to purchase the property from the owner' " (Village of Tarrytown v Woodland Lake Estates, 97 AD2d 338, 343, quoting from O'Brien v City of Syracuse, 54 NY2d 353, 357; see, Borntrager v County of Delaware, 76 AD2d 969, 970). "Inverse condemnation, rather than trespass, is the appropri-

ate theory for granting damages to an injured landowner where the trespasser is cloaked with the power of eminent domain" *(Tuffley v City of Syracuse,* 82 AD2d 110, 116). A cause of action sounding in inverse condemnation is not founded in tort, and, therefore, compliance with the notice of claim provisions of General Municipal Law § 50-e is unnecessary *(Torino v Town of Pleasant Val.,* 36 AD2d 963; *Van Nostrand v Town of Denning,* 132 AD2d 93, 95-96; *Borntrager v County of Delaware, supra).* In the case at bar, the requisite elements of inverse condemnation are not apparent. The cause of action discussing the 1968 boundary line agreement refers to the dredging and resulting tidal overflow and concludes that "no compensation was paid to the plaintiffs or their predecessors in title for the property which was flooded". Essentially, the plaintiffs are raising the settled Mastrosimone condemnation claim. The plaintiffs have not supplied evidence to support their allegations that their action seeks to "reduce the *continuing* nuisance, trespass and diminution of the environment at Gull Pond including the value and enjoyment of their own private properties". Moreover, assuming, arguendo, that the defendants' reference that "[o]ver the years the access channel from Gardiners Bay has been dredged, as needed", suggests that there has been continuous flooding of the plaintiffs' property, the record is devoid of any evidentiary proof to this effect. Hence, no question of fact is raised regarding the plaintiffs' inverse condemnation claim.

Thus, the fourth through sixth causes of action essentially present claims sounding in trespass which the court properly found must be dismissed, since no notice of claim was timely filed pursuant to General Municipal Law § 50-e. There is no merit to the plaintiffs' contention that because the "primary relief" sought is equitable in nature, no notice of claim is required. "Although the failure to serve a notice of claim has been excused in cases in which the primary relief sought was equitable in nature, and monetary damages were incidental, those cases also involved requests for injunctive relief from continuing acts by municipalities, a factor not present here *(Sammons v City of Gloversville,* 175 NY 346; *Dutcher v Town of Shandaken,* 97 AD2d 922; *Malcuria v Town of Seneca,* 84 AD2d 931, *mot to dismiss appeal granted* 55 NY2d 1037; *Fontana v Town of Hempstead,* 18 AD2d 1084, *affd* 13 NY2d 1134)" *(Itzkowitz v Town Bd.,* 139 AD2d 932). The amended complaint does allege that "[a]s a result of the Town's failure to regulate the use of Town-owned property, people, boats, and debris have passed over the Town's property line into the

properties of adjacent landowners", but this allegation is wholly unsupported by the record. Moreover, there is no assertion that this condition is continuing. Accordingly, these causes of action were properly dismissed.

We have considered the plaintiffs' remaining contentions and find them to be without merit. Bracken, J. P., Kooper, Harwood and Balletta, JJ., concur.