In the Matter of the Application of THE CITY OF NEW YORK Relative to Acquiring Title to Lands Required for the Opening of Avenue " D " in the Borough of Brooklyn.

FERNANDO WOOD, Appellant; THE CITY OF NEW YORK et al., Respondents.

*Matter of City of New York (Avenue " D ")*, 140 App. Div. 894, reversed. (Argued November 16, 1910; decided December 13, 1910.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 11, 1910, which affirmed an order of Special Term confirming a report of commissioners of estimate and assessment.

*Benjamin Trapnell* and *Joseph A. Flannery* for appellant.

*Archibald R. Watson,* Corporation Counsel (*Edward Riegelmann* and *Arthur J. Stern* of counsel), for City of New York, respondent.

*Robert H. Haskell* for property owners, respondents.

CHASE, J.   This proceeding was instituted on the 23rd day of December, 1904, by the board of estimate and apportionment of the city of New York passing a resolution pursuant to the provisions of the Greater New York charter by which it declared " it for the public interest that the title to the lands and premises required for the opening and extending of Avenue ' D ' from Flatbush avenue to Rogers avenue in the

borough of Brooklyn, city of New York, should be acquired by the city of New York." The said board by its resolution requested the corporation counsel of the city to make application at a Special Term of the Supreme Court for the appointment of commissioners of estimate and assessment and to take the necessary proceedings in the name of the city of New York to acquire title for the use of the public to the lands required for the purpose of opening and extending said Avenue " D " as stated. Commissioners of estimate and assessment were thereafter duly appointed and the oaths of said commissioners were duly filed as required by law on the 14th day of June, 1905. On the 17th day of November, 1905, the board of estimate and apportionment, pursuant to the provisions of the Greater New York charter, by resolution directed " That upon the 15th day of December, 1905, the title to each and every piece or parcel of land lying within the lines of said Avenue 'D' from Flatbush avenue to Rogers avenue in the borough of Brooklyn, city of New York so acquired shall be vested in the city of New York."

It is not claimed that the city of New York became vested with the title to said lands prior to December 15, 1905, and it is conceded that the city did become vested with the title on that day. The commissioners of estimate and assessment proceeded to take testimony as to the value of the land affected by the proceeding in behalf of the property owners and the city, and on June 2, 1908, they adopted and signed their then final report by which they found and assessed the damages for parcel No. 1, which will be hereafter further described, at $28,780, and for parcel No. 3, which will also be hereafter further described, at $28,330. A motion was made at a Special Term of the Supreme Court to confirm their report but it was denied and the report was remitted to the commissioners for revision and correction. The judge presiding at the Special Term wrote an opinion which is made a part of the record.

Subsequently the commissioners, pursuant to the order directing a revision and correction of their report, met and heard further testimony on behalf of the appellant and the adjoining property owners. The city did not offer any fur-

ther testimony, but its counsel addressed the commission as follows:

"In behalf of the City of New York I will say that I believe there will be no necessity of the City offering any evidence in this case in view of the decision of Mr. Justice KELLY, and the City originally had presented proof as to values assuming that this property in question was unincumbered, and that the City in acquiring the fee to same should be compelled to pay the market value.

"In view of the fact that the Town Survey Commissioners' map has been offered in evidence and that the property known as Avenue D, from Rogers Avenue to Flatbush Avenue, is shown on said map as a proposed street to be laid out in Kings County, and without making any claim that this property is subject to easements by reason of said map, but in view of the dictum laid down by Judge KELLY to the effect that the land in Avenue D, between the points indicated, is in an ownership entirely distinct from the ownership of the abutting land, and that it is no use other than for street purposes, the Commissioners would be justified in making an award for such land which would be a value in accordance with said conditions and circumstances.

"I believe that there have been cases of this character in the City of New York in some one of the boroughs where similar conditions existed, where the Commissioners have made an award of $1.00 a front foot, and I will later submit any information about that case that I can obtain, to the Commissioners.

"If the Commissioners believe that they need any proof in behalf of the City, to show any different value in this proceeding other than its full market value as indicated by the testimony in the case (I mean when I speak about testimony in the case, the original case) why, I would respectfully suggest that a day be set in the near future on which the City may introduce such proof, but I personally believe that in cases of this character, in cases where land is subject to easements, that there is really no necessity for any proof; that the Commissioners may take the facts into consideration and award an arbitrary nominal value for land of this character."

An adjournment was then taken by the commissioners for a few days when they again met and gave instructions for the preparation of an amended preliminary report wherein the award of damages for the different parcels was to be made at the rate of one dollar per running foot measured along the center line of the street. The amended preliminary report and subsequently a final report were signed and filed accordingly in each of which the sum awarded for damages by reason of taking parcel No. 1 is $289.97 and for parcel No. 3, $720, being one dollar per running foot of the street as stated. The final report was thereafter in all things confirmed by the court at Special Term. An appeal was taken from the order confirming said report to the Appellate Division, where it was unanimously affirmed, without opinion. This appeal is taken from such order of affirmance.

It is necessary briefly to trace the history of the property taken by this proceeding. It was formerly a part of what was well known for many years as the Pope farm. The Pope farm was a strip of land only about 160 feet in width and it extended easterly from Flatbush avenue in a straight line about 3,000 feet. In 1869 the legislature by chapter 670 of the laws of that year passed an act entitled " An act for the appointment of commissioners to lay out a plan for roads and streets in the towns of Kings county." By that act commissioners were named for the purposes stated in the title of the act. It was provided by said act that the commissioners should have " exclusive power to lay out streets, avenues and public places, of such width, extent and direction as they shall decide, and after the passage of this act, until the adoption of such permanent plan, no person or persons, or officers, shall lay out streets or roads in said towns, without the consent of said commissioners first obtained, except in cases where streets, avenues or roads have been or shall be authorized by special acts of the legislature, in which cases such acts shall have full power and effect, anything in this act to the contrary notwithstanding."

It was further provided that after the adoption of such permanent plan " no street or avenue shall be laid out in said towns, or either of them, except in accordance with said plan

so adopted, and all streets or avenues afterwards opened, widened or improved, shall be made to conform to such permanent plan and the lines thereof. If any buildings shall be erected on the line of any avenue or street, as laid out on said plan after the filing of said map, no compensation shall be paid to the owner thereof on the opening of said street." (Section 5.)

The commissioners so appointed adopted a permanent plan for laying out streets, avenues and public places, which was duly filed June 13, 1874, and upon such permanent plan Avenue D as laid out by them passed through the Pope farm so as to leave on the north side thereof a strip of land substantially sixty feet in width, and on the south side thereof another strip of land substantially twenty feet in width. Nothing further was done so far as the lands acquired in this proceeding are concerned until the commencement of the proceeding.

Rogers avenue and Bedford avenue each cross said Pope farm. The lands acquired in this proceeding are the lands described as Avenue D, from Flatbush avenue on the west to Rogers avenue on the east, and they are crossed by Bedford avenue. The distance on the center line from Flatbush avenue to Bedford avenue is 289.97 feet, and the land acquired in this proceeding lying between said avenues is known as parcel No. 1.

The distance on the center line from Bedford avenue to Rogers avenue is 720 feet, and the land acquired in this proceeding lying between said avenues is known as parcel No. 3.

On August 1, 1904, the title to the lands for the purpose of opening Avenue D east of Rogers avenue had vested in the city of New York. On September 2, 1904, before the commencement of this proceeding the appellant herein purchased with other lands all that part of the Pope farm situated west of Rogers avenue and between Flatbush avenue and Rogers avenue from the then owners thereof. On the 28th day of June, 1905, the appellant conveyed to one Steers that part of the Pope farm lying between Flatbush avenue and Rogers avenue with the following exceptions and covenants : " Except-

ing however from the above described premises so much thereof as lies within the lines of Bedford Avenue, title to which has already been vested in the city of New York. Also excepting however from the above described premises so much thereof as lies within the lines of Avenue 'D' as the same is laid down on the town survey commissioners' map of Kings county between the easterly line of Flatbush Avenue and the westerly line of Rogers Avenue.

"Also excepting and reserving any and all awards heretofore made or hereafter to be made in the proceeding to open Avenue 'D' from the easterly side of Flatbush Avenue to the westerly side of Rogers Avenue.

"Subject, however, to the assessments for acquiring title by the City of New York for that portion of the premises lying in Avenue 'D' as laid down on the Town Survey Commissioners' Map of Kings county and lying between the easterly line of Flatbush Avenue and the westerly line of Rogers Avenue, and the purchaser hereby agrees not to oppose or seek to reduce the awards made or to be made in the matter of opening Avenue 'D' between Flatbush Avenue and Rogers Avenue for land lying adjacent to the property hereby contracted to be sold.

"Nothing contained in this deed shall be construed as dedicating to public use Avenue 'D' or any portion thereof nor to subject the same to any easement in favor of the party of the second part, it being the intention of the party of the first part to retain the bed of said Avenue 'D' in fee simple absolute. The above covenant shall run with the land."

The conveyances mentioned were intended to and did pass the title to the lands described therein. There is no claim of collusion or bad faith between the parties to such conveyances, but it is asserted, and not denied, that the appellant held the title to the lands acquired in this proceeding for the benefit of one Joseph A. Flannery, the equitable owner thereof. It is also asserted that the appellant has, according to his claim, avoided granting a public or private easement or allowing such an easement to be acquired over said lands for the express purpose of making it necessary for the municipality to pay a large sum as damages in acquiring the lands.

The alleged effort to enhance the damages to be paid to the appellant by the city and the property owners to be assessed for the improvement is severely condemned, but we are of the opinion that the question of law for our determination in this case arises from a few undisputed facts that are not affected by the purpose or intention of the appellant in asserting and maintaining his claim for damages.

The history of the title to the lands, conveniently described as Avenue D, between Flatbush avenue and Rogers avenue, does not disclose any impairment of the absolute fee vested in the appellant immediately before the date of its vesting in the city of New York in this proceeding.

The filing of the map of the permanent plan by said commissioners on June 13, 1874, did not restrict its use by the owner. It was substantially so held in the proceeding to lay out Rogers avenue in 1885. (*Matter of Opening Rogers Avenue*, 29 Abb. [N. C.] 361.)

The chief judge of this court then sitting at Special Term, referring specially to that part of the act of 1869 which provides that no compensation shall be paid to the owner on the opening of a street as laid out on said plan for a building erected therein after the filing of the map, says:

" So the right to property includes the right to use that property for any lawful purpose of profit to the owner. * * * Whenever that right is restricted, property is taken within the meaning of the constitution. * * * But, palpably, an enactment that one shall not improve his property, in order that in case the public should acquire it, it may purchase it cheap, is no exercise of the police power. There is no provision in the act of 1869 for compensating the owner for this deprivation of the right to use his land. In my opinion, therefore, the direction contained in that act, that he shall receive nothing for his building, is void. I do not say that when a highway is laid out, and provision made for its speedy and certain opening, buildings could be erected to enhance the damages. But there is no direction to open the streets laid out under the act of 1869. The opening of such streets is entirely discretionary with the various town authorities. Decades not only may, but doubtless will, elapse before the majority of such streets

are opened.   Even in the case of One Hundred and Twenty-
seventh street, New York, cited above, over sixty years
intervened between the laying out of the street and the
compensation to the owners of the land." (p. 365.)

The mere filing of a map or commencement of a proceeding
without obligating the municipality to take the lands described
and pay to the owners just compensation therefor, does not
affect the absolute fee in the owners thereof.   (*Mott* v. *Eno*,
181 N. Y. 346, 376 ; *Forster* v. *Scott*, 136 N. Y. 577 ; *Roddy*
v. *Brooklyn City & Newtown R. R. Co.*, 32 App. Div. 311,
314 ; *Matter of Mayor, etc., of N. Y.* [*Mount Vernon Ave.*],
127 App. Div. 650 ; *Bauman* v. *Ross*, 167 U. S. 548, 597 ;
*Matter of City of New York* [*Briggs Ave.*], 196 N. Y. 255.)

The appellant being the owner of that part of the Pope
farm between Flatbush avenue and Rogers avenue at the time
of the commencement of the proceeding was entitled to just
compensation for such part of said lands as the city should
take for the purpose of opening Avenue D.   It was all then
used together as farm land.   It does not appear from the
record that he, at any time by express grant, conveyed a
public or private easement over the lands acquired in this
proceeding.   It is claimed by the respondents that the appel-
lant, by selling the lands of the Pope farm between Flatbush
avenue and Rogers avenue other than that part thereof within
the boundaries of Avenue D as laid out on said map, con-
veyed for the use of the lands so sold a private right of way
over said Avenue D, because such right of way is necessary
to the lands so sold to Steers.   After the deed by the appel-
lant to Steers, he was the owner of four separate pieces of
land ; two pieces were between Flatbush avenue and Bedford
avenue ; one about 20 by 250 feet situated on the south side
of Avenue D ; and one about 40 by 330 feet situated on the
north side of Avenue D, and two pieces were between Bed-
ford avenue and Rogers avenue ; one about 20 by 720 feet
situated on the south side of Avenue D, and one about 40 by
720 feet situated on the north side of Avenue D.   Each of
these four pieces of land at each end thereof adjoins a public
avenue.   The pieces of land so sold to Steers were not entirely
surrounded by the lands which the appellant retained.   Steers

as a witness testified that he was familiar with the covenants in the deed by which he purchased. It was as convenient for Steers to go to either of said avenues from any part of the lands purchased by him over the lands so purchased as to pass therefrom over the lands retained by the appellant; but, even if it would be convenient for Steers to pass over the land of the appellant, mere convenience is not enough on which to base an easement by implication. The covenants in the grant to Steers are plain and, in any event, prevent the possibility of a grant of easements in Avenue D by implication. There was nothing to prevent Steers from selling the lands purchased by him in separate lots facing upon the avenues respectively to suit prospective purchasers. If he should desire to sell a lot in the middle of one of the blocks of a size and at a point where no part of such lot would adjoin an avenue, the question of an outlet therefrom would not affect the appellant.

The appellant in the sale to Steers retained two pieces of land, one the eighty-feet strip between Flatbush avenue and Bedford avenue, which is about 300 feet long, and the other the eighty-feet strip between Bedford avenue and Rogers avenue, which is 720 feet long. Each of these two pieces of land fronts at either end on a public avenue. After the sale to Steers and up to the time that title vested in the city of New York there was nothing to prevent the appellant from using the land facing upon the avenues respectively for building or other purposes. The value of the middle of said blocks for anything other than yards in connection with the lots facing on the avenue is a question for the consideration of the commissioners. It is not the purpose of this court to discuss the question of damages. We agree with the contention of the respondents that as the confirmation of the report of the commissioners has been unanimously affirmed by the Appellate Division this court has no jurisdiction to examine or pass upon the question of damages as a question of fact. It is claimed by the respondents that there is no question of law for the consideration of this court.

We have quoted the language of the corporation counsel in addressing the commission at the close of the evidence in

the proceeding, in which he assumed that the commission is bound in accordance with his interpretation of the opinion delivered at the Special Term when the first report was before that court for confirmation to treat the lands acquired in the proceeding as of no use to the owner other than for street purposes, and suggested to the commission that they "award an arbitrary nominal value for the lands." He also suggested that such value be fixed at one dollar per running foot of the lands taken. The commissioners accepted his suggestion and made such award, and while it is not nominal in that it is more than six cents or one dollar for all the lands taken, it was clearly intended to be an arbitrary and nominal value and not an assessment of damages for the absolute fee of the lands acquired. The respondents claimed before the commission and claim now that the appellant should be treated as the owner of the naked fee of the lands acquired in this proceeding and only entitled to nominal damages as held by us in *Matter of City of New York* [*Decatur Street*] (196 N. Y. 286).

The appellant presented his position clearly before the commission and was overruled, and he filed objections to the final report in which he said :

"2. That the award of the Commissioners of Two hundred and eighty nine and 97/100 dollars ($289:97) made for Damage Parcel Number One (1) and the award of Seven hundred and twenty dollars ($720) made for Damage Parcel Number Three (3) are grossly inadequate and improper and based upon an erroneous theory.

"3. Said awards are meant to be practically nominal and not to represent the intrinsic value of the land taken in this proceeding upon the theory that said land was subject at the date of vesting of title to some form of easement or incumbrance, whereas such was not the fact.

"4. Said awards represent simply an arbitrary determination made by the Commissioners in accordance with supposed instructions of the Supreme Court but contrary to the intent of said Court and to the equity and justice of the case.

"5. That the awards made for said Damage Parcels One (1) and Three (3) constitute a taking of private property without just compensation, contrary to Article 1, Section 6 of the

35

Constitution of the State of New York, and a taking of private property without due process of law contrary to the XIVth Amendment of the Constitution of the United States of America."

We are of the opinion that the award for damages made to the appellant by the commissioners is based upon an erroneous theory of the appellant's title to the lands acquired and for that reason the orders of the Appellate Division and of the Special Term should be reversed, with costs to the appellant, and the proceedings remitted to the commissioners for a new appraisal.

CULLEN, Ch. J.  I think that in reversing the orders in this case our action in no way conflicts with the provisions of the Constitution.  The constitutional provision is (Art. VI, § 9): "No unanimous decision of the Appellate Division of the Supreme Court that there is evidence supporting or tending to sustain a finding of fact or a verdict not directed by the court shall be reviewed by the Court of Appeals."  We hold that a unanimous affirmance by the Appellate Division of a judgment based on findings of fact imports a unanimous determination that the findings of fact are supported by the evidence.  We also hold that the constitutional provision applies to special proceedings as well as to actions and, therefore, in any special proceeding where there are findings of fact those findings are conclusive upon this court.  But there are many special proceedings in which no findings of fact are made, but a mere decision is found.  If we construe the constitutional provision as strictly limited to its language, the cases last mentioned would not fall within the provision at all.  We have not, however, so construed it, but have applied the constitutional rule to special proceedings where an examination of the case showed that the order was based on the decision of questions of fact.  It cannot, however, be extended to cases where it is apparent the decisions have proceeded on questions of law.  Otherwise it would be impossible to review final orders in special proceedings where no findings of fact were made, because in nearly all such cases it is theoretically possible to imagine facts which justified the decisions below,

although it is apparent that the decisions proceeded solely on questions of law. An inspection of the record in this case shows that the award was not based on any determination as to the value of the land taken free and clear from incumbrance, but on the theory that the conveyances of the plaintiff had incumbered the land so as to practically destroy its value. Whether those conveyances had the effect given them presents a question of law.

Holding this view as to what the appeal presents, I concur in the opinion of CHASE, J.

VANN, J. (dissenting). The industry and ingenuity of some landowners and their legal advisers in making crafty preparation for the condemnation of land by public authority should meet with repression instead of encouragement. While *just* compensation must be paid even to such a landowner, when furtive preparation has been made in order to take advantage of the city or of the adjoining property owners, courts and commissioners should be astute to see that no more is awarded than the land is justly worth under all the circumstances. If the preparation made, as in this case, through the conveyance of all the land on either side of a strip, which it was known was presently to be taken for a street, leaves a long narrow parcel, just wide enough for a street and good for little else, protected by cunning covenants against easements and even from opposition to any award made, as well as from assessment on any part thereof by the fact that the entire strip is needed for a street, the owner should receive just what such an awkward and nearly useless strip of land is worth and no more. The first award in this case was so extravagant if not extortionate as to meet with stern condemnation upon the motion to confirm, and the opinion of Mr. Justice KELLY proved that it was wrong in principle and the result of a deliberate plan to unjustly mulct the city and the adjoining property owners.

The second award is now before us for review and as the affirmance was unanimous we cannot look into the evidence to discover error, except in admission or exclusion, and there is no error of that character. The award is not nominal, but

although moderate, is substantial. A nominal award is a merely nominal sum, such as six cents or one dollar, or an amount so trifling that payment thereof would not be exacted. This award is for more than one thousand dollars, or nearly as much as any person in the state would have if all the property therein were equally distributed among the inhabitants thereof. There is nothing on the face of the award, or in any action, declaration or ruling by the commissioners to show that the award is nominal, or that they regarded it as nominal. Under the rule of unanimous affirmance, so far as the question of damages is concerned, the case comes before us with the same effect as if no evidence whatever appeared in the record.

The sole issue in this proceeding is what was the fair market value of the land when taken, and a question of valuation is always a question of fact. We have repeatedly declared that the rule of unanimous affirmance applies to special proceedings as well as actions, to final orders as well as judgments and to implied findings as well as to those written out in full.

In *People ex rel. Manhattan R. R. Co.* v. *Barker* (152 N. Y. 417, 435) we said : " The phrase ' a finding of fact ' may mean simply a finding expressed in words or, also, a finding implied from the nature of the decision. (*Amherst College Case*, 151 N. Y. 321.) Both kinds were known to the law when the convention sat, for section 1022 of the Code, which was then in force, provided that the decision, upon a trial of the whole issues of fact, might separately state the facts found and the conclusions of law, or it might state concisely the grounds upon which the issues were decided, and direct the judgment to be entered thereon. The latter kind was similar, both in form and effect, to the general verdict of a jury, and commingled fact and law in the same way. We have recently held that all the facts warranted by the evidence and necessary to support the judgment, are presumed to have been found by a decision that does not state the facts. (*Amherst College Case, supra.*) The legislature, as the convention is presumed to have known, had done away with findings of fact, absolutely, as formerly made upon request, and in all cases, as a matter of right, yet with this

knowledge, it used language that applies with equal force to all findings of fact made by courts or referees, whether written out in words or not, the same as it applies to all findings of fact made by a jury, whether general, without expressing the facts, or special, by expressing them in full. It cannot be that the legislature, by prohibiting express findings of fact, could practically abolish the constitutional provision in question, yet this would be possible, unless it applies to implied findings, as well as those written out *in extenso.* In view of the primary object of the judicial article to confine this court to the great duty of settling the law, and to give it time to do the work well, I think that the convention used the phrase 'finding of fact' in no narrow or technical sense, but with the broad and liberal meaning which, alone, would accomplish its important purpose. * * * A unanimous affirmance of the judgment or order appealed from necessarily affirms all the findings of fact, whether expressed or not, that are essential to support the decision made below, the same as the affirmance of a general verdict."

While the opinion in that case is broader than the question presented for decision, it was so written in order to announce the position of the court on a new and important question of practice. The principles laid down in that opinion apply directly to this appeal and should control our decision. We have uniformly and consistently followed it ever since, as a multitude of decisions show, of which I cite a few as examples. (*People ex rel. Broadway Improvement Co.* v. *Barker*, 155 N. Y. 322; *Matter of Chapman*, 162 N. Y. 456, 460, 461; *Reed* v. *McCord*, 160 N. Y. 330, 334; *People ex rel. Sands* v. *Feitner*, 173 N. Y. 647, 649; *Matter of Fitzsimons*, 174 N. Y. 15, 25; *People ex rel. Loughran* v. *Board of R. R. Comrs.*, 158 N. Y. 421, 430.)

In the case last cited the facts were not written out, for the decision was simply an order "that the application be and it is hereby granted." In *People ex rel. Broadway Improvement Co.* v. *Barker* (*supra*) we held that the rule of unanimous affirmance "applies to special. proceedings as well as to actions, and to implied findings as well as to those written out *in extenso.*" (p. 324.)

Attention is called to the multitude of cases arising on certiorari, involving the determination of commissioners in removing policemen and firemen, in which we have always applied the rule when the affirmance was unanimous, although the findings were rarely written out and were necessarily implied.

Moreover, in this case the findings were express, not implied, as an examination of the record shows. The commissioners found "That the sums of money awarded by us for the damage sustained by reason of this proceeding with interest thereon from the date of vesting of title in this proceeding to the date of this our report amount to the sum of one thousand two hundred and forty-two dollars and twenty-six cents ($1,242.26)." In the list of "Awards for Damage," signed by the commissioners and annexed to their report as a part thereof, is the following: "Map No. 1, Fernando Wood, land, $289.97; interest, $66.69 * * *. Map No. 3, Fernando Wood, land, $720; interest, $165.60. Total, $1,242.26."

These are express findings, made after an issue joined and evidence taken through the medium of witnesses. We cannot reverse the order appealed from without disregarding the constitutional amendment of 1895, as well as repeated announcements by this court of its position in construing it.

I think that the adroit effort to manipulate real estate in this case, so as to injure innocent third persons, has thus far met the fate it deserves, and that the order appealed from should be affirmed, with costs.

GRAY, HAIGHT, WERNER and WILLARD BARTLETT, JJ., concur with CHASE, J., and CULLEN, Ch. J.; VANN, J., reads dissenting opinion.

Orders reversed, etc.