VILLAGE OF EAST ROCHESTER, Respondent, *v.* ROCHESTER GAS & ELECTRIC CORPORATION et al., Appellants, Impleaded with Others.

Argued October 27, 1942; decided January 14, 1943.

*Edmund B. Naylon, Earl L. Dey, George J. Nier* and *George Foster, Jr.,* for appellants. The easements of the electric corporation were granted prior to the dedication of the streets as public highways, which dedication was expressly made and accepted subject to the exclusive and perpetual rights of the electric corporation to use such streets for the transmission and distribution of electricity. (*Matter of City of New York* (*East 177th St.*), 239 N. Y. 119; *Niagara Falls Suspension Bridge Co.* v. *Bachman,* 66 N. Y. 261; *Nichols Copper Co.* v. *Connolly,* 208 App. Div. 667; 240 N. Y. 596; *Wright* v. *City of Mount Vernon,* 44 App. Div. 574; 167 N. Y. 541; *City of Oswego* v. *Oswego Canal Co.,* 6 N. Y. 257; *People* v. *Brooklyn & Queens Transit Corp.,* 273 N. Y. 394; *Stillman* v. *City of Olean,* 228 N. Y. 322; *City of Cohoes* v. *D. & H. Canal Co.,* 134 N. Y. 397; *People* v. *Sutherland,* 252 N. Y. 86; *Johnson* v. *City of Niagara Falls,* 230 N. Y. 77; *Matter of Wallace Avenue,* 222 N. Y. 139.) The easements are in no respect contrary to the public policy of the State. (*People ex rel. N. Y. Edison Co.* v. *Willcox,* 207 N. Y. 86; *Wright* v. *City of Mount Vernon,* 44 App. Div. 574; 167 N. Y. 541; *City of Oswego* v. *Oswego Canal Co.,* 6 N. Y. 257; *Village of Long Beach* v. *Long Beach Power Co.,* 104 Misc. 337; *Tallon* v. *City of Hoboken,* 60 N. J. L. 212; *City of Jacksonville* v. *Shaffer,* 107 Fla. 367; *Gwin* v. *City of Greenwood,* 150 Miss. 656; *Continental Securities Co.* v. *Interborough R. T. Co.,* 207 Fed. 467; 221 Fed. 44; *City of Los Angleles* v. *Los Angeles Gas & Electric Corp.,* 251 U. S. 32; *Twin City Pipe Line Co.* v. *Harding*

*Glass Co.*, 283 U. S. 353; *Walla Walla* v. *Walla Walla Water Co.*, 172 U. S. 1; *Vicksburg* v. *Vicksburg Water Works Co.*, 202 U. S. 453.) The Legislature could not destroy the exclusive character of the easements subject to which these streets were donated to the village by conferring on municipalities generally the right to go into the electric business. (*Eighth Ave. Coach Corp.* v. *City of New York*, 286 N. Y. 84; *People* v. *O'Brien*, 111 N. Y. 1; *Long Island R. R. Co.* v. *Summers*, 263 App. Div. 889; *D., L. & W. R. R. Co.* v. *Town of Morristown*, 276 U. S. 182; *Pennsylvania Coal Co.* v. *Mahon*, 260 U. S. 393; *Matter of Village of Boonville* v. *Maltbie*, 272 N. Y. 40.)

*Percival D. Oviatt* and *Carlton F. Bown* for respondent. The deeds to Despatch Power Company were ineffectual and void in so far as they attempted to grant exclusive rights in the streets, because they constituted an attempt by private parties to create a monopoly, to restrain trade, and were contrary to public policy. (*Central N. Y. T. & T. Co.* v. *Averill*, 199 N. Y. 128; *West Virginia Transp. Co.* v. *Ohio River Pipe Line Co.*, 22 W. Va. 600; *Western Union* v. *American Union*, 65 Ga. 160; *Gibbs* v. *Consolidated Gas Co.*, 130 U. S. 396; *People ex rel. Perceval* v. *Pub. Serv. Comm.*, 163 App. Div. 705; *Parfitt* v. *Ferguson*, 159 N. Y. 111; *Western Union Tel. Co.* v. *Postal Union*, 217 Fed. 533; *St. Louis & C. R. R.* v. *Postal Tel. Co.*, 173 Ill. 508.) The State or a municipality with delegated powers has complete control over the streets. (*Milhau* v. *Sharp*, 27 N. Y. 611; *New York Central R. R. Co.* v. *Middleport G. & E. Light Co.*, 193 App. Div. 273; 232 N. Y. 622; *Matter of Rhinehart* v. *Redfield*, 93 App. Div. 410; 179 N. Y. 569; *Grand Trunk Western* v. *City South Bend*, 174 Ind. 203; *Rogers Park* v. *City of Chicago*, 131 Ill. App. 35; *Bradley* v. *Spokane*, 79 Wash. 455; *State ex rel. Townsend* v. *Board Pk. Comm.*, 100 Minn. 150; *Gale* v. *Village of Kalamazoo*, 23 Mich. 344; *City of Joseph* v. *Joseph Water Works*, 57 Ore. 586.) Municipalities have no power to grant exclusive franchises. (*Syracuse Water Co.* v. *City of Syracuse*, 116 N. Y. 167; *Milhau* v. *Sharp*, 27 N. Y. 611; *Waterloo Water Co.* v. *Village of Waterloo*, 200 App. Div. 718; *Bradley* v. *Spokane*, 79 Wash. 455; *Rogers Park* v. *City of Chicago*, 131 Ill. App. 35; *Syracuse Water Co.* v. *City of Syracuse*, 116 N. Y. 167; *Belden* v.

*City of Niagara Falls*, 230 App. Div. 601; *Gale* v. *Village of Kalamazoo*, 23 Mich. 344; *A. R. T. Co.* v. *Hess*, 125 N. Y. 641.) The grants to Despatch Power Company and the reservations in the deeds to the towns were ineffectual because of the dedication made and accepted and because of prior grants covering the same matters. (*Johnson* v. *City of Niagara Falls*, 230 N. Y. 77; *Geddes C. S. Co.* v. *N. L. & O. Power Co.*, 207 N. Y. 500; *Johnson* v. *Grenell*, 188 N. Y. 407; *Newton* v. *City of Dunkirk*, 121 App. Div. 296; *Bridges* v. *Wyckoff*, 67 N. Y. 130; *Niagara Falls* v. *N. Y. C. & H. R. R. R. Co.*, 41 App. Div. 93; *Matter of Hunter*, 163 N. Y. 542; 164 N. Y. 365; *Buffalo L. & R. Ry. Co.* v. *Hoyer*, 214 N. Y. 236.)

FINCH, J. This is an action brought by the Village of East Rochester as plaintiff for a declaratory judgment to determine its right to use the streets of the village to construct a municipal lighting plant for the purpose of lighting the streets and to sell electricity to private consumers, as against a claim by the Rochester Gas & Electric Corporation that the latter had acquired an exclusive right for such use of the streets prior to the incorporation of the village. No right is claimed by the village to take or interfere in any way with the physical equipment now used by the Rochester Gas & Electric Corporation. The latter seeks to enforce, in addition to its easement rights, a contract right through which it claims to exclude all others, including the village, from using any portion of the land comprising the streets of the village, even though such land is not in any way used by the Rochester Gas & Electric Corporation.

The record shows that, prior to the year 1897, a developer named Parce sought to develop unimproved rural land situated in the towns of Pittsford and Perinton, Monroe county, and lying some eight miles southeast of the city of Rochester. At that time there were but three public highways in this area, Lincoln road, Washington street and Linden avenue.

At first Parce appears interested only in the sale of lots. Subsequently he became interested in the acquisition of public utilities, and in 1904, in the value of a monopoly in connection with the ownership of these public utilities. Before its incorporation in 1906, the settlement or hamlet was known as " Despatch."

In June of 1897, Vanderbilt Improvement Company, hereinafter called Vanderbilt, which had been incorporated a few months before the improvement, development and sale of the real property, filed a subdivision map in the County Clerk's office by which an area was divided into lots and blocks fronting on various streets delineated thereon. None of these streets, with the exception of the three named and already in existence, was a public highway. Subsequently, other similar maps were filed, subdividing lands added to the original area. In 1897, Vanderbilt began a selling campaign. From June, 1897 to July 31, 1905, Vanderbilt conveyed, by lot number and by reference to the filed maps, 360 lots *without any reservation* of title in the streets. In the latter part of the same period, namely from April, 1901 to July 31, 1905, there were approximately 361 conveyances of lots containing the following clause: " Excepting and reserving therefrom the street or streets abutting upon said premises, the fee of which subject to the use of said street or streets as a highway or highways is retained in the Vanderbilt Improvement Company."

It has been found by the official referee and affirmed by the Appellate Division, with one dissent, that from the first filing of the maps in 1897 an intention existed to dedicate the highways shown on the maps as public highways. It has likewise been found that this offer to dedicate continued up to the time when the dedication was accepted by the plaintiff village. In *Buffalo L. & R. Ry. Co.* v. *Hoyer* (214 N. Y. 236, 243) we held that a municipality need not be in existence at the time of the dedication, but acceptance may occur when the municipality comes into existence. There the court said: " It is enough that the lots are offered, sold and bought with the understanding that the designated portions are public parks and commons. The municipality upon its subsequent organization becomes the trustee for the public to the extent of the dedication."

Whether or not a dedication existed from the first filing of the maps presents a question of fact (*Johnson* v. *City of Niagara Falls*, 230 N. Y. 77) which has been found and affirmed by the Appellate Division in favor of the plaintiff.

There is substantial evidence to support the findings of the official referee, affirmed by the Appellate Division, of an intention

to dedicate the streets and highways as public streets and highways, and to keep this offer open until acceptance by a duly incorporated village. The filing of the maps showing thereon the layout of the streets and avenues furnishes some evidence of this intention. (*Niagara Falls Suspension Bridge Co.* v. *Bachman*, 66 N. Y. 261.) Mere filing of maps and a mere user for a limited time, however, are not sufficient standing by themselves, to constitute a dedication. (*Matter of City of New York*, 239 N. Y. 119.) The findings, however, of the official referee do not have to rest upon such narrow facts. In addition to the filing of the maps, with the streets and highways delineated thereon, we have the fact that in 1897 Parce showed his intention not only to designate these streets and highways as public streets and highways, but he also looked forward then to an incorporated village. We have a deed by Vanderbilt dated August 24, 1897, in which Vanderbilt, over Parce's signature as president, restricted the use of a lot in the subdivision for a period of twenty years, "or until said lot shall be included in a duly incorporated village." This deed was only one of many of like character. In addition, all the deeds which reserved title in the streets contained a reservation in the following language, "subject to the use of said street or streets as a highway or highways." Admissions by the grantor, even though oral, are evidence of an intention to dedicate. (*Newton* v. *City of Dunkirk*, 121 App. Div. 296.) In addition, we have the deed from Vanderbilt to the Despatch Heat, Light and Power Company, recorded in July, 1904, wherein a nonexclusive privilege was given to use the streets, and the following language was used: "All streets, avenues, parks, alleys, lanes, highways and other public places * * * as laid out and shown on a map." The statement that the streets, highways and other public places are shown on the maps indicates that the maps themselves showed the dedication according to the intention of the owner. (*Newton* v. *City of Dunkirk, supra.*) In the same conveyance the privilege granted is extended to "all other streets * * * highways, and other public places which now are or may hereafter be laid out." The use of the word "other" before "public places" indicates that the streets and highways which preceded this word were also public places.

All this evidence occurred at a time preceding July, 1905, when the building company attempted to grant to the Despatch Heat, Light and Power Company, the predecessor of the Rochester Gas & Electric Corporation, the exclusive rights to use the streets for an electric plant.

Up to 1901 there was in existence no systematic plan for utilities for public service. In July, 1904, the certificate of incorporation of Despatch Heat, Light and Power Company was filed. At the same time there was filed a certificate of incorporation of a sewerage company. In May, 1905, there was filed a certificate of incorporation of a water company to supply water to municipalities. In July, 1905, there was filed a certificate of incorporation of a building company to deal in real estate. By deed dated July 15, 1905, Vanderbilt granted to the sewerage company a nonexclusive right to use the streets for sewerage purposes. By deed dated July 15, 1904, there was transferred to the Despatch Heat, Light and Power Company, the business of electric lighting and the good will thereof at the so-called village of Despatch, in Penfield. By deed on the same date, Vanderbilt conveyed to the Despatch Heat, Light and Power Company the nonexclusive right to use the streets for the purpose of distributing electricity. A deed dated May, 1905, conveyed to the water company the exclusive and perpetual right to use the streets for a water works system. In July, 1905, the building company granted to the Despatch Heat, Light and Power Company the sole, exclusive and perpetual right to use the streets for an electric plant.

The deed from the building company and a deed from Vanderbilt to Despatch Heat, Light and Power, dated, respectively, July 27, 1905 and July 31, 1905, granting exclusive rights to use the streets for equipment to serve electricity, contained the following clause: " The rights, privileges and franchises herein intended to be granted and conveyed shall be and hereby are sole, exclusive and perpetual. except as to gas and steam."

It is to be noted that from the first sale of lots whereby purchasers had title to the center of the roadway, the dedication of streets and highways was irrevocable so far as these purchasers were concerned, and no exclusive easement could be given in those lands unless the consent of all those purchasers was obtained.

Nothing of the sort appears in the record. Indeed, appellants say in their brief: " Even assuming, without conceding in any way, that in those instances where the conveyance to purchasers of lots did not contain such a reservation, the Electric Corporation does not have any easement, nevertheless, its easements are valid and exclusive in the other half of the development, and in order to render service throughout the area the municipality would have to, and it proposes to, use those streets."

Where, therefore, purchasers received deeds containing no reservations and therefore took title to the center of the street subject to the street use, we have a situation where the purchaser had purchased lots on a public highway, and this right to have the lot face on a public highway rather than a private highway could not be taken away from him without his consent. (*Flack* v. *Village of Green Island*, 122 N. Y. 107.) Since these public highways constitute in their very nature arteries of travel, if the dedication of a portion of the highway may not be revoked, the dedication of the highway itself, standing as a whole, may not be revoked.

We have, then, substantial evidence to support the finding of the official referee, affirmed by the Appellate Division, that there was an intention to dedicate irrevocably these streets and highways as public streets and highways until accepted by the duly incorporated village. When, therefore, there was an attempt by private corporations to grant an exclusive right to use these streets for an electric plant, these acts went beyond the power of any private party so to use public streets and highways. In the case at bar, as already noted, the record only shows that the conveyances were about evenly divided between those conveyances where the lot owner had title to the middle of the street and the grantor made no reservations, and instances where the grantor reserved merely a naked fee in the highway subject to highway uses. There is nothing to show whether there were any streets upon which a naked fee was reserved in the entire street. Concededly, where no reservation had been made of the naked fee of the street, the grant by the private corporation was invalid. (*Geddes Coarse Salt Co.* v. *Niagara, L. & O. P. Co.*, 207 N. Y. 500.) As to the instances where the grantor had reserved the naked fee of the street, the grantor, as a private party, could not burden the public street for a street use with an exclusive grant.

In *People* v. *Kerr* (27 N. Y. 188, 201) the court, in assuming that an abutting owner had a right in a city street, even though the fee was otherwise owned, said: " That interest can only be the ultimate right of reverter subject to the rights of the public, or the city, to the possession and use of the land, for all of the objects and purposes of a public street to which it has been devoted by confiscation or grant, and as long as it is required for these purposes."

The right to exclude others from the use of land is an incident of complete ownership. When, however, the owner of land, although reserving the fee therein, subordinates his property rights in the land to public uses by a dedication, he surrenders the privilege of excluding others and that right, if it exists, passes into the hands of the municipality which is trustee for the public to the extent of the dedication. (*Buffalo L. & R. Ry. Co.* v. *Hoyer*, 214 N. Y. 236.) This conclusion is strengthened when we consider the well-established doctrine that the property rights of an owner of the fee in a public street are very limited and of little value. (*Matter of Rapid Transit Railroad Commissioners*, 197 N. Y. 81; *Matter of City of New York*, 196 N. Y. 286.) Somewhat analogous are the cases which hold that railroads have no right to grant exclusive privileges to use their rights of way. (*St. Louis & C. R. R. Co.* v. *Postal Telegraph Co.*, 173 Ill. 508; *Western Union Telegraph Co.* v. *Burlington & S. Ry. Co.*, 11 Fed. 1; *Western Union Tel. Co.* v. *American Union Tel. Co.*, 65 Ga. 160.) If then public policy forbids exclusive privileges to be granted in railroad rights of way because of the devotion to public use, the same policy with equal if not more reason may be applied to property similarly dedicated for use as public streets.

In view of the fact that we are resting this case upon the principle that private parties, even though owning the naked fee in the streets of a village, may not grant exclusive rights to use the street for a street use, namely lighting, to an electric company, it becomes unnecessary to consider the claim by respondent than in any event the attempt to grant an exclusive franchise to the Rochester Gas & Electric Corporation was ineffectual and void as an attempt by private parties to create a monopoly and to restrain trade, contrary to public policy. (*Central New York Tel. & Tel. Co.* v. *Averill*, 199 N. Y. 128.)

Rochester Gas & Electric Corporation further urges that the attempt to use the streets of the village for a municipal plant constitutes an attempted taking of the property rights of the electric company in their easements, and hence would be contrary to the constitutional safeguards against taking property without due process of law. Since the physical properties of the Rochester Gas & Electric Corporation are not in any way interfered with, and since an attempted grant of an exclusive privilege by private owners in city streets is invalid, no issue arises as to any taking of property of the Rochester Gas & Electric Corporation.

Nor can there be any claim by the Rochester Gas & Electric Corporation that there is to be any interference with its franchise by the village. When in 1905 the Despatch Heat, Light and Power Company obtained consents from the towns to use their streets, it neither asked for nor received an exclusive franchise. Hence, the village, when it seeks the rights herein sought, is not in any way interfering with the franchise rights of the Rochester Gas & Electric Corporation.

The Appellate Division relies upon article 14-A, sections 360 and 364, of the General Municipal Law (Cons. Laws, ch. 24) which permit a municipality to construct its municipal plant for the purpose of lighting its streets and selling electricity to consumers without application to the Public Service Commission. We are not shown how the rights of the Rochester Gas & Electric Corporation may be diminished by this section of the General Municipal Law. If the Rochester Gas & Electric Corporation possessed a valid exclusive franchise to use these streets of this village, this article 14-A would not seem to deprive it of this right without compensation. (*Pennsylvania Coal Co.* v. *Mahon*, 260 U. S. 393.)

It follows that the judgment appealed from should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment affirmed.