29 N.Y.2d 97 (1971)
In the Matter of the City of New York, Respondent, Relative to Acquiring Title to Real Property Required for the Opening and Extension of India Street in the Borough of Brooklyn. Sealand Dock and Terminal Corporation et al., Appellants.
Court of Appeals of the State of New York.
Argued May 10, 1971.
Decided July 7, 1971.
Arthur D. Goldstein and Samuel Goldstein for appellants.
J. Lee Rankin, Corporation Counsel (Milton H. Harris and Stanley Buchsbaum of counsel), for respondent.
Judges BURKE, BERGAN, JASEN and GIBSON concur with Chief Judge FULD; Judge SCILEPPI dissents and votes to reverse in a separate opinion in which Judge BREITEL concurs.
*100 Chief Judge FULD.
We thoroughly agree with the courts below that the claimants are entitled to only nominal damages because the three damage parcels before us were encumbered by public easements. Indeed, we would be content to affirm on the opinion by Special Term (66 Misc 2d 324) were it not for the fact that our dissenting brothers treat of matters which, though subsumed, were not discussed by that court.
It is true, as stated in the dissent, that a street "dedication" does not create a public easement unless there is evidence of an acceptance by the public of an offer to dedicate the street and that public easements may be abandoned by nonuser under section 205 of the Highway Law but neither of those principles of law is applicable to India Street, the street here involved. What is significant is that the portion of India Street with which we are concerned ran to a wharf on the East River waterfront in New York Harbor and that such a street  created by a statutory grant as a means of public access to a wharf on lands simultaneously granted by the State to riparian owners  may not be *101 equated with, or treated like, a country highway or an ordinary city street.
The question of acceptance of a dedication does not arise in this case in view of the fact that the development of India Street into a public street in 1849 did not stem from creation by dedication. Acceptance by the public, a step said to be lacking here, was, therefore, not required. Dedication of a street, the court declared in Scarborough Props. Corp. v. Village of Briarcliff Manor (278 N.Y. 370, 377), "`is essentially of the nature of a gift'" by a private owner to the public and it becomes effective when the gift is accepted by the public.[1] The claimants' predecessors in 1849 gave nothing and, accordingly, there was nothing for the public to accept. On the contrary, it was the claimants' predecessors who were on the receiving end in 1849. The State enacted a statute which gave those riparian owners the valuable lands under water on the express condition that they would set aside public streets giving access to the waterfront "forever" (L. 1849, ch. 302).[2] The only acceptance required was on the part of the recipients, the riparian owners, and, in point of fact, they did accept the grant on the explicit conditions specified. Thus, as found by the courts below, they filled in the granted land as required, made the contemplated improvements, constructed extensions of India Street to the water and erected abutting structures.
The circumstance that the part of India Street under consideration was a street adjacent and leading to a wharf in New York Harbor and created under a statutory grant explicitly declaring it to be a public street "forever", has a bearing also on the question of abandonment by reason of nonuser under *102 section 205 of the Highway Law. That statute has been held not to apply where the fee to lands has been condemned for highway purposes. (See New York Cent. & H. R. R. R. Co. v. City of Buffalo, 200 N.Y. 113, 119-120.) Although India Street did not come into being by a condemnation taking in fee, the manner of its creation just as surely removed it from the ambit of section 205. The portion of India Street comprising Damage Parcels 2 and 3 was created by the filling in of lands below high-water mark. There was, therefore, a necessary extension, in perpetuity, of the public right of access over the filled in area, from the old high-water mark to the new wharf line, further out in the tidal waters. The public right in such property is described in Matter of City of New York (Main St.) (216 N.Y. 67) as a right of passage from the terminus of a street at the high-water line to tidal waters, a right which is extended by any filling which extends the upland further out into such waters (pp. 75-76):
"A perpetual right of way exists in favor of the public between the terminus of a street at the high-water line of navigable tidal waters and those waters. The public had a right to pass directly from the street to the sound and from the sound to the street  a right of passage over the place where the land highway and navigable waters meet. Whenever under lawful ownership or authority the waters bounding the end of a street are displaced by earth or other filling, or a wharf or structure is built out from the street into the waters, the easement of the street is extended by operation of law to the end of the filling or the structure."
In reaching our decision, we but apply the settled principles reflected in the case from which we have just quoted (216 N.Y. 67, supra). The part of India Street consisting of Damage Parcels 2 and 3 came into being in perpetuity not only by force of established common law, relating to the foreshore, as set forth in that case but by express provision of the 1849 statutory grant which effected a gift of public lands under water  Damage Parcels 2 and 3  to the claimants' predecessor in title. As previously noted (p. 101, n. 2), it was provided (L. 1849, ch. 302, § 5) that, "[a]fter the streets designated on the aforesaid map * * * shall be made by the owners respectively whose property *103 fronts on them, they shall forever remain and be public streets". (Emphasis supplied.) Damage Parcel 1 encompasses the eastern segment of India Street. It was laid out 10 years prior to the 1849 grant. Since the abutting owners of Parcel 1 were the riparian owners who were the recipients of the 1849 grant, their acceptance of that grant, on condition that India Street  the portion in Damage Parcels 2 and 3  give public access to the wharves and tidewater "forever", necessarily extended the identical public rights to the Damage Parcel 1 section of India Street. If the public in 1849 had not acquired such rights in the Damage Parcel 1 portion, the public would have been excluded from the use of the wharves and from access to the tidewater built on land which the State had contemporaneously given to the riparian owners. Such an absurd conclusion could never have been contemplated and, in any event, the express words of the 1849 grant do not permit such a conclusion.
One final word. The claimants, by placing a gate across India Street and hiring a guard to shoo people away from the area for six years did not, by such conduct, terminate this public street running to harborfront wharves. Indeed, there is an affirmed finding that "for more than a century [it has been] burdened by easements as a public street", and there is supporting evidence in the record that the street was paved with cobblestones and was being used by as many as 350 trucks a day at the time of the condemnation. Since abandonment denotes a complete nonuser, such a street may not be deemed "abandoned" within the sense of the Highway Law.
The order appealed from should be affirmed, with costs.
SCILEPPI, J. (dissenting).
I do not agree that the property taken in this street opening proceeding was encumbered by public easements and that compensation should be limited to an award of nominal damages.
This litigation is the result of a project conducted by the City of New York to construct a sewage treatment facility near the Brooklyn waterfront. Claimants are the owners of varying interests in a marine terminal located in the proximity of this treatment plant. Their property spans four blocks between the East River and West Street and consists of piers, wharves and *104 streets. Plans submitted for the construction of the sewage facility required that an underground conduit be built which would carry treated sewage into the East River. Portions of claimants' property were selected as a suitable site for this purpose, and two proceedings were commenced to acquire the necessary rights. The first was for permanent underground easement for construction of the conduit and for two temporary three-year construction easements. We have denied leave to appeal in this first proceeding (27 N Y 2d 489), and our inquiry here is limited to the second proceeding brought to open and acquire title to that part of India Street which runs through claimants' property from West Street to the United States Bulkhead line, a distance of some 656 feet. In the litigation before us, this parcel has been divided into separate units: Damage Parcel 1 is that part of the street running from West Street to the original high-water line; Damage Parcels 2 and 3 together run from the original high-water line to the present high-water line and are located on land reclaimed by prior owners.
The history of Damage Parcel 1 can be traced back to the early 19th century when this strip of land and surrounding property was part of a farm owned by one John Messerole. Messerole died intestate and his property was partitioned in 1839. Maps prepared, and the decree of the court rendered at that time, reveal that the Messerole farm was subdivided into 814 lots with transversing paper streets. The property abutting what is now India Street was conveyed to several Messerole heirs and the chancery deeds, relevant here, contain the following language: "[t]ogether with the lands forming the streets adjoining to and in front of the said lots to the middle of the streets * * * subject nevertheless to a right of way over the lands so laid down as streets in the owners of the other property".
Subsequently, in 1849, legislation was enacted granting the upland owners, their heirs and assignees, the right to reclaim land along the waterfront and to build and maintain bulkheads, docks and wharves (L. 1849, ch. 302, § 1). It was further provided that these individuals would be "entitled to ask, demand, sue for and receive reasonable wharfage, dockage and cranage from persons using the same" (id., § 2), and they were required to have the City Surveyor prepare a map (id., § 3). Relevant to this appeal is section 5 of this chapter which reads as follows: *105 "§ 5. After the streets designated on the aforesaid map drawn by Daniel Ewen, city surveyor, and running from high water mark into the East river, shall be made by the owners respectively whose property fronts on them, they shall forever remain and be public streets for the free and common use and passage of the inhabitants of the county of Kings, and all others lawfully passing or repassing the same; saving and reserving, nevertheless, to the owners of the bulkheads, docks, or wharves, which may be built pursuant to this act across the ends of said streets, all wharfage, dockage and cranage from persons using the same as aforesaid." (Emphasis supplied.) The statutory map was prepared and subsequently, in 1920, the then riparian owners surfaced the street. It is this extension, existing on reclaimed land, which constitutes Damage Parcels 2 and 3.
The courts below have held that claimants were entitled to only nominal damages because the three damage parcels were encumbered by public easements. The existence of a public easement is, of course, a question of fact (Matter of City of New York [Sharnack], 17 N Y 2d 746; Village of East Rochester v. Rochester Gas & Elec. Corp., 289 N.Y. 391; Matter of City of New York [Braddock Ave.], 278 N.Y. 163). Consequently, since this appeal is here on affirmed findings of facts, the question before this court is whether there is any foundation in the record to support the inference made by the courts below (Cohen and Karger, Powers of the New York Court of Appeals [rev. ed.], § 116, pp. 498-499).
Essential to a finding that a public easement existed is evidence indicating either public use or dedication and acceptance (City of Cohoes v. Delaware & Hudson Canal Co., 134 N.Y. 397; 5 Warren's Weed, New York Real Property, Streets and Highways, §§ 2.01, 3.02, 5.01, 5.02). The record before us reveals no public use of India Street. Indeed, since 1946 and possibly longer, the public has been denied access to the street. A fence has been erected and maintained by claimants and a guard admits only those who have business with them. Additionally, the city has never contributed to the maintenance of the street and it appears that claimants have always performed this task. Notwithstanding these controlling considerations, the majority chooses to fashion a special rule because the street ran to the waterfront and thus, sustains the findings made below. Observing *106 that the dedication of a street is in the nature of a gift which must be accepted by the public (Scarborough Props. Corp. v. Village of Briarcliff Manor, 278 N.Y. 370, 377), the majority concludes that, in this case, the People were not the beneficiaries of any gift and consequently, acceptance by the public was not necessary to the creation of public easements. I cannot subscribe to such a rationale for it is my view that the majority overlooks the fact that, though claimants' predecessors received a boon from the legislation of 1849, the creation of India Street as a public street was a gift to the public. More importantly, it is most significant here that the three damage parcels did not come into being in the same manner and for that reason it is necessary to refer to them separately.

PARCEL 1
With regard to Damage Parcel 1, the city has placed great emphasis on the maps and conveyances, prepared when the Messerole tract was partitioned. It is posited that these ancient documents, subsequent atlases and tax records demonstrate the existence of public easements burdening Damage Parcel 1. I disagree. Although these indicia may be sufficient to support a finding that prior owners offered to dedicate it as a public street (Matter of Hunter, 164 N.Y. 365; Matter of City of New York [Avenue "D"], 200 N.Y. 536; Matter of City of New York [E. 177th St.], 239 N.Y. 119; Goldrich v. Franklin Gardens Corp., 282 App. Div. 698), they do not satisfy the requirements of an acceptance (15 N. Y. Jur., Dedication, §§ 17-22; 5 Warren's Weed, op. cit., supra, Streets and Highways, §§ 3.01-3.05; 11 McQuillin, Municipal Corporations, § 33.45, p. 743). As one commentator has written, "[t]he mere surveying, mapping and laying out of a tract opening a street and selling lots upon it does not make such a street a public highway. These acts may raise a presumption of dedication to public use, but unless the dedication is accepted by the proper public authorities, or there is user of the strip as a highway, it will not become a public street." (5 Warren's Weed, op. cit., supra, § 5.02; see, also, Holdane v. Village of Cold Spring, 21 N.Y. 474; Bissell v. New York Cent. R. R. Co., 23 N.Y. 61; Niagara Falls Suspension Bridge Co. v. Bachman, 66 N.Y. 261). The city has made no *107 such showing. Indeed, the record before us is barren of any evidence upon which a finding of acceptance could be predicated and consequently, I conclude that Damage Parcel 1 has never been encumbered by a public easement.

PARCELS 2 AND 3
As previously indicated, Damage Parcels 2 and 3 were surfaced by the owners as a street on land reclaimed, pursuant to authority granted in the Act of 1849. The city's argument with reference to these parcels is premised upon language in the Act which unambiguously provides that once the reclaimed land had been made into streets, they would remain public forever. It is argued that public easements were created once the then abutting owners elected to avail themselves of the benefits bestowed by the Legislature. This is untenable, for in my opinion, notwithstanding the language employed by the Legislature, some form of acceptance by the city was necessary before public streets could be created.
It is well settled that a grantor cannot force a public street upon a municipality because of the responsibilities, liabilities and duties which are necessarily concomitant to the existence of public easements (People v. Underhill, 144 N.Y. 316; Smith v. Smythe, 197 N.Y. 457, 461; 11 McQuillin, op. cit., § 33.45). I am not persuaded that this rule is inapplicable to the matter at bar. Implicit in the decision reached by the court today is the view that where the grantor of public easements is the State, the requirement of an acceptance is waived. Although sister States have answered this question in varying ways (see, e.g., McKernon v. City of Reno, 76 Nev. 452, 460; Oklahoma City v. State ex rel. Williamson, 185 Okla. 219), it does not appear that this court has ever been squarely confronted with the issue. Of special relevance, however, is the 1852 decision in City of Oswego v. Oswego Canal Co. (6 N.Y. 257). There, the State had owned a tract of land in what eventually became the Town of Fredricksburgh. Legislation similar to that before us (L. 1811, ch. 231), directed the State Surveyor-General to lay out streets and the land-office commissioners to sell lots abutting the said streets. This was done in 1815 and subsequently, in 1825, the canal company was given the right to construct a canal which apparently *108 interfered with the use of the streets which had previously been laid out. When the village was incorporated in 1828, these streets were declared public highways and the village thereupon sought damages for obstructions and expenses incurred in building bridges over the canal. Since there had never been an acceptance of the public highways, the court affirmed a judgment nonsuiting the village. As Chief Judge RUGGLES wrote: "Any individual may lay out a way or thoroughfare through his own land; and may dedicate it as such to the public use; but such dedication does not impose upon the towns in which the lands lie, the duty of improving, or of keeping in repair as a public highway, the land so dedicated * * * The duty of causing roads to be described and recorded evidently applied to such roads as had previously been laid out by public authority, and to such as had been used as highways for twenty years; and not to roads which had been laid out by individuals on their own lands. The whole structure of the highway acts [sic] forbids the idea, that the town is bound to adopt and to keep in repair every road which an individual may think proper to open through his own land, although he may dedicate it to public use in such manner as to preclude himself from shutting it up. Streets and roads dedicated by individuals to public use but not adopted by the local public authorities, or declared highways by statutes, are not highways, within the meaning of the highway acts; and there is no law by which any one can be compelled to keep them in repair." (6 N.Y. 257, 263-264.)
Although the Oswego case seems to suggest that a different result might follow where there has been a legislative declaration that a street should be public, it is my view that, as with the case of Damage Parcel 1, statements made by the grantor, whether they be in a map, deed or in a statute where the State is the grantor, are nothing more than offers to dedicate to a public use. Consequently, since the city, prior to the institution of this proceeding, had never recognized the existence of India Street as a public street, either by express act or by maintenance and repair, there is no basis for the conclusion that public easements were created. Additionally, to conclude otherwise would be to allow the city to take, at this late date, the benefits of a grant where it has never assumed the obligations which would *109 necessarily exist had the street been so encumbered. This is why acceptance has always been required and the mere fact that the street runs to the waterfront does not justify a departure from established rules.
Nor is it arguable here that the very commencement of the street opening proceeding before us establishes acceptance. This was the holding in Matter of City of New York (Brigham St.) (136 Misc. 808, affd. 246 App. Div. 819, affd. 273 N.Y. 508). There a sales map had been filed in 1923 indicating the existence of the street in question. This filing was viewed as a dedication and the commencement of street opening proceedings, some seven years later, was deemed an acceptance. This case is inapposite since it did not involve a lapse of time of the magnitude of that presented in the matter at bar.
Lastly, even if I were to agree that public easements at one time existed in the three damage parcels, section 205 of the Highway Law would nevertheless compel a reversal. This section provides, in relevant part, that: "Every highway that shall not have been opened and worked within six years from the time it shall have been dedicated to the use of the public, or laid out, shall cease to be a highway; * * * and every highway that shall not have been traveled or used as a highway for six years, shall cease to be a highway, and every public right of way that shall not have been used for said period shall be deemed abandoned as a right-of-way." There is no question here but that the subject property has neither been opened, worked or used by the public for a period well in excess of that postulated by the Legislature. User of the street has been limited to those licensees of the claimants admitted by the guard on duty at the gate. This is clearly not the kind of user which would toll the application of section 205 and consequently, it is my view that these considerations require the conclusion that whatever public easements that may have conceivably existed have been discontinued (Porter v. International Bridge Co., 200 N.Y. 234; 3 Nichols, Eminent Domain [rev. 3d ed.], § 9.33 [2], p. 308).
Accordingly, since the courts below have erroneously awarded nominal damages on the theory that the property taken was encumbered by public easements, the order appealed from should be reversed, with costs, and the matter remitted to the Supreme *110 Court, Kings County, for a hearing to determine the amount of compensation to be awarded to claimants for the actual damages sustained.
Order affirmed.
NOTES
[1] The court in the Scarborough Props. Corp. case concluded that the offer by the plaintiff to "give" streets to the village for a substantial payment was a contractual offer and not an offer to dedicate. As Judge LEHMAN, writing for the court, put it (278 N. Y., at p. 379), "The rights of the parties are not affected by the circumstance that the plaintiff chose to call its offer an offer to dedicate instead of an offer to convey."
[2] The applicable statute read, in part, as follows (L. 1849, ch. 302, § 5): "After the streets designated on the aforesaid map drawn by Daniel Ewen, city surveyor, and running from high water mark into the East river, shall be made by the owners respectively whose property fronts on them, they shall forever remain and be public streets for the free and common use and passage of the inhabitants of the county of Kings, and all others lawfully passing or repassing the same".